41 Mass. App. Ct. 681        681

FIC Homes of Blackstone, Inc. v. Conservation Commission of Blackstone.

FIC Homes of Blackstone, Inc., & another[1] vs.
Conservation Commission of Blackstone & another.[2]

No. 95-P-118.

Worcester. March 14, 1996. - November 21, 1996.

Present: Ireland, Gillerman, & Lenk, JJ.

*Practice, Civil,* Action in nature of certiorari. *Wetlands Protection Act. Zoning,* By-law, Conditions, Wetlands. *Municipal Corporations,* Conservation commission. *Constitutional Law,* Taking of property. *Due Process of Law,* Taking of property.

Where an applicant for an order of conditions for construction of a house and driveway on a lot that bordered on and included a vegetated wetland did not meet their burden of proof to show that their proposed project would not harm interests protected by the conservation by-law, the conservation commission was warranted in denying the application; moreover, the applicant's failure to seek a variance for their acknowledged violation of the by-law was sufficient itself to warrant the commission's decision. [685-686]

A conservation commission's denial of an order of conditions for construction on a lot containing wetlands was not arbitrary and capricious and the conservation by-law did not prohibit the commission's consideration of previous impacts on the lot and adjacent lots as relevant to an assessment of the potential effects of the project on the interests protected by the by-law. [686]

Where a town's wetlands conservation by-law provided more expansive protection of the buffer zone than the Wetlands Protection Act and where the by-law was the basis for the conservation commission's denial of an order of conditions allowing a construction project to proceed, a subsequent superseding order of the Department of Environmental Protection under the act did not preempt the commission's decision. [686-688]

In an action in the nature of certiorari challenging a conservation commission's denial of an order of conditions barring the building of a house and driveway on a certain lot containing wetlands, the denial did not constitute a per se regulatory taking in violation of the Fifth Amendment to the United States Constitution where the plaintiffs were not deprived of all economic value of their property [688-689]; further, where the

[1]Pascack Builders, Inc.
[2]Town of Blackstone.

plaintiffs did not demonstrate that the application of the by-law to their property did not advance a legitimate State interest and was invalid [689-693], where the plaintiffs had no reasonable investment-backed expectation that its project would not be subject to the by-law [693-694], where the plaintiffs did not demonstrate that their economic loss was severe from the application of the by-law [694-695], and where there was no allegation of a physical invasion of the plaintiffs' property [695], there was no regulatory taking compensable under Federal law.

CIVIL ACTION commenced in the Superior Court Department on March 3, 1993.

The case was heard by *John C. Cratsley, J.*

*Henry J. Lane* for the plaintiffs.

*Joel B. Bard* for the defendants.

LENK, J. Acting under Blackstone's wetlands by-law (1991), that town's conservation commission denied to the plaintiffs an order of conditions for construction of a house and driveway on a lot that bordered on and included a vegetated wetland. The proposed construction would violate a by-law prohibition against building within 100 feet of a wetland, and would, the commission concluded, have an adverse impact on interests protected by the by-law, including ground water supply, storm damage prevention, prevention of pollution, and protection of wildlife habitat. The plaintiffs appealed from the denial to the Superior Court in an action in the nature of certiorari, see G. L. c. 249, § 4, claiming that the commission had acted arbitrarily and capriciously in denying the order of conditions. The plaintiffs also alleged that the commission's denial was preempted by a subsequent superseding order of conditions issued by the Department of Environmental Protection (DEP) under the Wetlands Protection Act, and that the by-law was invalid as applied to the plaintiffs' land; thus, denial of the order of conditions constituted a regulatory taking in violation of the Fifth Amendment to the United States Constitution. The Superior Court affirmed, concluding that the commission's decision was not preempted by the DEP superseding order and did not constitute a taking. The plaintiffs appeal from the court's decision. We affirm.

On July 15, 1992, the plaintiff FIC Homes[3] (FIC) purchased thirty-eight lots in the sixty-five-lot Federal Hill Estates subdivision located in Blackstone. The prior developer had defaulted, and FIC purchased the property from the Federal Deposit Insurance Corporation. Five years before FIC bought the lots, the prior developer, in March, 1987, had obtained an order of conditions from the commission, pursuant to the Wetlands Protection Act (act), G. L. c. 131, § 40, and c. 119 of the Blackstone wetlands by-law (by-law), authorizing construction of roadways, drainage, and utilities in the subdivision (1987 order). The 1987 order, which expired by its own terms in 1990, required construction of wetlands replication areas on lots 7, 8, and 47 as compensation for the loss of wetlands resulting from construction of the major road through the subdivision, Rocco Drive. After the road construction and replication work were completed, part of the replication area on lot 47 leaked onto lot 48, thereby also creating a wetland area on lot 48. On September 3, 1992, the plaintiffs, acting pursuant to the act and the by-law, filed a notice of intent (NOI) with the commission to build a house and driveway on lot 48. As proposed, a small part of the house and virtually the entire driveway would be within a 100-foot buffer zone protected by the by-law. When the plaintiffs filed the NOI, and indeed, when FIC purchased the property in July, 1992, the by-law then in effect, at § 119-2, required filing of a NOI for any work proposed within 100 feet of wetlands (the buffer zone), and, at § 119-12(B), a mandatory 100-foot setback from the wetlands for any buildings.

The commission held public hearings on the plaintiffs' proposal on September 29, 1992, October 20, 1992, November 10, 1992 (at which the plaintiffs requested a continuance, because they were revising their site plan as a result of inaccuracies noted by commission members), December 8, 1992 (where the plaintiffs requested a further continuance), and January 12, 1993. The plaintiffs revised their plan a number of times during this period, in response to concerns raised regarding impacts of the project on the wetlands values protected by the act and the by-law. However, the commission found the final submitted plan (dated November, 1992)

---

[3]FIC Homes is the developer of the subdivision. The co-plaintiff, Pascack Builders, Inc., is the developer's affiliated builder.

inadequate and voted unanimously to deny the order of conditions at its January 12, 1993, meeting. The formal order of conditions denying permission for the project was issued on February 1, 1993, pursuant to both the act and the by-law. On March 3, 1993, the plaintiffs appealed from the commission's decision under the by-law to the Superior Court. While the Superior Court appeal was pending, the plaintiffs also appealed from the commission's decision under the act to the DEP. In response to concerns expressed by the DEP, the plaintiffs modified their plan once more, on June 4, 1993. DEP found the modifications adequate to safeguard wetlands interests protected by the act, and, during the pendency of the Superior Court action, issued a superseding order of conditions on July 27, 1993, granting permission for the project to proceed under the act. The commission did not appeal from the superseding order. The plaintiffs did not request the commission to reconsider its February 1, 1993, decision based upon the plaintiffs' revised June, 1993, plans.

1. *Review under certiorari.* The plaintiffs appealed from the commission's denial of an order of conditions in an action in the nature of certiorari pursuant to G. L. c. 249, § 4. In a review under certiorari, the court is limited to correcting "substantial errors of law apparent on the record adversely affecting material rights." *Commissioner of Rev.* v. *Lawrence,* 379 Mass. 205, 208 (1979) (citations omitted). See also *Carney* v. *Springfield,* 403 Mass. 604, 605 (1988). The standard of review varies "according to the nature of the action for which review is sought." *Forsyth Sch. for Dental Hygienists* v. *Board of Registration in Dentistry,* 404 Mass. 211, 217 (1989), and cases cited. As the plaintiffs argue that the commission applied improper criteria in denying the order of conditions, we apply the "arbitrary and capricious" standard to our review of its decision.[4] See *Fafard* v. *Conservation Commn. of Reading, ante* 565 (1996). "A decision is not arbitrary and capricious unless there is no ground which 'reasonable

---

[4]The plaintiffs also briefly argue that the commission's decision was not supported by substantial evidence in that there was "no real evidence that the final plan submitted . . . will have any adverse impact . . . on the interests protected by the by-law." This statement, without further explication or citation to relevent authority, does not rise to the level of acceptable appellate argument, and we need not address it. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). We note, however, that ample evidence supported the commission's decision that interests protected by the by-law

[persons] might deem proper' to support it." *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover*, 36 Mass. App. Ct. 124, 128 (1994), quoting from *Cotter* v. *Chelsea*, 329 Mass. 314, 318 (1952).

The plaintiffs complain that in its decision under the by-law, the commission: (a) relied on a "presumption of significance" for the denial of the plaintiffs' proposal, where the by-law contains no provision for such a presumption; and (b) considered the proposed activity on lot 48 in relation to the entire subdivision, and in relation to previous impacts on lot 48 and adjacent lots, where these concerns are not explicitly articulated in the by-law.

a. *Presumption of significance.* The commission's February 1, 1993, written denial of the order of conditions states, "A Denial of Order of Conditions under the . . . Wetland Bylaw is issued for the proposed work. Presumption of significance was not overcome in relation to ground water supply, storm damage prevention, prevention of pollution, and protection of wildlife habitat." The plaintiffs argue that, while the act contains a presumption of significance for inland wetlands (see 310 Code Mass. Regs. § 10.55[3] [1989]),[5] no such language appears in the town by-law. The plaintiffs acknowledge, however, that the by-law, at § 119-9, places the burden of proof on them to demonstrate that their proposed project will not harm interests protected by the by-law.[6] We see no functional difference between placing the burden of proof on the applicant to show that activities in protected areas will not harm interests protected by the by-law, and a presumption of significance for protected areas. We note that the plaintiffs do not cite to any evidence in the administrative

would be adversely affected by the plaintiffs' development plans. See part 3(b)(i), *infra.*

[5]"Where a proposed activity involves the removing, filling, dredging or altering of a Bordering Vegetated Wetland, the issuing authority shall presume that such area is significant to the interests specified . . . . This presumption is rebuttable and may be overcome upon a clear showing that the Bordering Vegetated Wetland does not play a role in the protection of said interests." 310 Code Mass. Regs. § 10.55(3) (1989).

[6]Section 119-9 of the by-law provides: "The applicant shall bear the burden of proving that the work proposed in the notice of intent will not harm the interests protected by this chapter. Failure to provide adequate evidence to the Commission shall be sufficient cause to deny or condition the project."

record demonstrating that they met their burden before the commission.[7]

Moreover, the plaintiffs have not explained their failure to seek a variance for their acknowledged violation of § 119-12(B) of the by-law, which imposes a 100-foot wetlands setback requirement on buildings. This was another of the commission's reasons for denying their proposal, and is alone sufficient to uphold the commission's decision, as it is well established that no one is entitled to a variance. *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. at 559. See also *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277 (1969).

b. *Consideration of previous impacts and context of entire subdivision.* In section 3 of its order, the commission states, "The proposed activity on Lot 48 in relation to the scope of the subdivision and previous impacts to Lot 48 and adjacent lots have not been taken into consideration." The plaintiffs argue that the by-law does not explicitly allow for such considerations. While the plaintiffs' brief does not rise to the level of appellate argument on this point, see Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), we nonetheless note that the by-law does not bar such considerations, which, as the trial court noted, appear to be highly relevant to an assessment of the potential effects of the proposed project on the interests protected by the by-law. For example, at the time of the plaintiffs' proposal, lot 48 itself contained wetlands, as a result of wetland replication work on the abutting lot 47 that had leaked onto lot 48. Such considerations are certainly not irrelevant in assessing the impacts of the plaintiffs' proposal. The commission's denial of the order of conditions was not arbitrary or capricious.

2. *Preemption.* The plaintiffs argue that as the Blackstone by-law is no more stringent than the Wetlands Protection Act, the act governs their proposal. The commission's denial of an order of conditions was, therefore, superseded by DEP's subsequent superseding order of conditions allowing the project to proceed. It is well established that municipalities may enact more stringent requirements than those provided in the act. *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass.

---

[7]For discussion of the basis for the commission's conclusion that wetlands interests protected by the by-law would be harmed by plaintiffs' proposal, see part 3(b)(i), *infra.*

7, 14-15 (1979). When a local conservation commission rests its decision on a wetlands by-law that provides greater protection than the act, its decision cannot be preempted by a DEP superseding order. *DeGrace* v. *Conservation Comm. of Harwich*, 31 Mass. App. Ct. 132, 136 (1991), citing *Hamilton* v. *Conservation Commn. of Orleans*, 12 Mass. App. Ct. 359, 368 (1981).

The Blackstone wetlands by-law clearly affords greater protection than the act. The by-law requires applicants to file a notice of intent for any work within a 100-foot buffer zone of a wetland.[8] In contrast, the act regulates activities in the buffer zone only if they will "alter" a nearby wetland.[9] In addition, the by-law requires a 100-foot wetlands setback for any building,[10] a requirement that has no parallel provision in the act. Thus, "the by-law's scope of control is more expansive than that of the act and eliminates the burden of proof problems associated with the State regulation." *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover*, 36 Mass. App. Ct. at 127. In the instant case, virtually all of the proposed work would take place in the 100-foot buffer zone; no work in the wetland was proposed. As the by-law's more expansive protection of the buffer zone served as a basis for the commis-

---

[8]Section 119-2 of the wetlands by-law provides in relevant part:

"[N]o person shall remove, dredge, fill or alter *within one hundred (100) feet of* any wetland ⋯ without first filing a written notice of intent . . . and obtaining and complying with an order of condition issued pursuant to this chapter" (emphasis supplied).

[9]The regulations implementing G. L. c. 131, § 40, provide in relevant part:

"Any activity proposed or undertaken within 100 feet of an area specified in 310 CMR 10.02(1)(a) [including freshwater wetlands, marshes and swamps] (hereinafter called the Buffer Zone) *which, in the judgment of the issuing authority, will alter an Area Subject to Protection* under M.G.L. c. 131, § 40 is subject to regulation . . . and requires the filing of a Notice of Intent" (emphasis supplied). 310 Code Mass. Regs. § 10.02(2)(b).

[10]Section 119-12(B) of the wetlands by-law provides in relevant part: "Every proposed building shall have a one-hundred-foot setback from any wetlands . . ."

sion's decision, it cannot be preempted by a DEP superseding order under the act. *Id.* at 126-128.

3. *Regulatory taking.* The plaintiffs contend that, by issuing an order of conditions barring them from building a driveway and house on lot 48, the commission has effected a regulatory taking of their property under the Fifth Amendment to the United States Constitution. As provided by *Lucas* v. *South Carolina Coastal Council*, 505 U.S. 1003, 1027, 1029 (1992), if application of the wetlands by-law deprived the plaintiffs of all economically beneficial use of their property, a per se taking would have been effected,[11] unless certain exceptions obtain. See *Lopes* v. *Peabody*, 417 Mass. 299, 303 (1994). If, however, the regulation has resulted in less than a total loss of the economic value of the plaintiffs' property, the question as to whether there has been a regulatory taking must be analyzed under pre-*Lucas* principles requiring the consideration of several interrelated factors, viz., (i) the validity of the by-law as applied to the plaintiffs' property; (ii) the plaintiffs' reasonable investment-backed expectations; (iii) the economic impact on the plaintiffs' property; and (iv) the character of the governmental action. *Lopes* v. *Peabody, supra* at 304. *Leonard* v. *Brimfield*, 423 Mass. 152, 154 (1996).

a. *Per se taking.* We turn first to the question whether the plaintiffs have been deprived of all the economic value of their property.

> "Because our test for regulatory taking requires us to compare the value that has been taken from the property with the value that remains in the property, one of the critical questions is determining how to define the unit of property 'whose value is to furnish the denominator of the fraction.' "

*Keystone Bituminous Coal Assn.* v. *DeBenedictis*, 480 U.S. 470, 497 (1987) (citation omitted). In determining the proper "denominator," we consider the regulation's effect on the entire parcel, rather than on individual segments of the parcel.

> " 'Taking' jurisprudence does not divide a single parcel

---

[11]The only other basis for finding a per se taking would be a permanent physical occupation of the plaintiffs' property, which was not alleged, and we do not consider. *Lucas*, 505 U.S. at 1028 (1992), citing *Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982).

into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the *parcel as a whole* . . . ." (Emphasis supplied.)

*Moskow* v. *Commissioner of Envtl. Mgmt.*, 384 Mass. 530, 533 (1981), quoting from *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. 104, 130-131 (1978). Accord *Fragopoulos* v. *Rent Control Bd. of Cambridge*, 408 Mass. 302, 308 (1990).

On July 15, 1992, by one deed, FIC purchased thirty-eight lots in the Federal Hill Estates subdivision. There was evidence at trial that FIC paid $389,474 for the thirty-eight lots, including three lots (lots 7, 8, and 47) which it acknowledged at the time of purchase (and does not contest here) to be unbuildable. According to the plaintiffs' appraiser, lot 48 is worth $31,800 if buildable, and $1,200 if not buildable. This represents a loss in value of $30,600. There was further evidence that the thirty-four buildable lots in the parcel had sold (with houses on them) for an average of $115,000 each. The plaintiffs' gross proceeds from the sale of the thirty-four buildable lots on the parcel were, therefore, roughly $3,910,000. There was no evidence at trial as to the plaintiffs' costs for constructing homes on the lots, nor was there evidence indicating the plaintiffs' net profit from sale of the thirty-four buildable lots. However, it surely is reasonable to conclude that, with gross sales of close to $4 million, a loss of roughly $31,000 does not represent a 100 percent loss of economic value.[12] There was, therefore, no per se taking of the plaintiffs' property.

b. *Pre*-Lucas *analysis.* We turn then to the pre-*Lucas* analysis of the plaintiffs' claims, an examination of the several interrelated factors to determine whether there has been a regulatory taking of their property. We consider first whether

---

[12]We note also that it was the plaintiffs' burden to demonstrate the severity of their economic loss. *Lopes* v. *Peabody*, 417 Mass. at 307 n.13. They introduced opinion testimony regarding the estimated loss in value of lot 48. However, they did not address the question of their over-all estimated loss, when considering the project as a whole, as we have done. The party with the burden of production should not benefit from failing to carry that burden.

the wetlands by-law was valid as applied to the plaintiffs' property.

   i. *Validity of the by-law as applied to plaintiffs' property.* The plaintiffs carry the burden of demonstrating that the by-law as applied to their property does not "substantially advance legitimate State interests." *Lopes* v. *Peabody*, 417 Mass. at 307 n.13. See also *Steinbergh* v. *Cambridge*, 413 Mass. 736, 745 (1992), cert. denied, 508 U.S. 909 (1993). The Blackstone wetlands by-law protects a variety of "wetlands values," including, inter alia, "public and private water supply, groundwater, flood control, erosion and sedimentation control, storm damage prevention, water pollution prevention . . . [and] wildlife habitat." There is no question that these are legitimate State interests. See *Turnpike Realty Co.* v. *Dedham*, 362 Mass. 221, 227-229 (1972), cert. denied, 409 U.S. 1108 (1973); *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. at 18-19; *Moskow* v. *Commissioner of Envtl. Mgmt.*, 384 Mass. at 532; *Southern New England Conference Assn. of Seventh-Day Adventists* v. *Burlington*, 21 Mass. App. Ct. 701, 709-710 (1986), citing *Fogelman* v. *Chatham*, 15 Mass. App. Ct. 585, 588 (1983). It is also well established that, in furtherance of those interests, the town may include requirements in its wetlands by-law that are more stringent than those in the act, as Blackstone has done by requiring a notice of intent for any work in the 100-foot buffer zone, and by barring building within the buffer zone. See discussion at part 2, *supra*. Thus, the plaintiffs have the burden of proving that the by-law, as applied to their property, does not substantially advance the town's interest in protecting wetlands values in both the buffer zone and the wetlands resources.

   The plaintiffs do not claim to have satisfied the requirements of the by-law.[13] It is undisputed that their project would include building in the buffer zone, and that such activity is

---

[13]We note in passing that the plaintiffs' takings claim could be dismissed for failure to exhaust administrative remedies (an argument not advanced by the defendants). Takings claims are generally not ripe until all administrative remedies have been sought, including granting of a variance where the statute or by-law at issue provides for such exceptions. *Williamson County Regional Planning Commn.* v. *Hamilton Bank*, 473 U.S. 172, 190-191 (1985), cited approvingly by *Wilson* v. *Commonwealth*, 413 Mass. 352, 356 (1992). The by-law, at § 119-12(B), provides for a variance from the 100-foot setback requirement. The plaintiffs never sought a variance, and the fact that they proposed to build in the 100-foot buffer zone without

barred by the by-law. The plaintiffs argued before the commission that only eighteen percent of the buffer zone would be disturbed by the proposed driveway. However, the commission observed that, since the plaintiffs' proposed driveway runs the length of the lot, and bisects the buffer zone, it severs the upper portion of the buffer from the wetland it is intended to protect. The commission therefore concluded that the upper portion of the lot would no longer be "a functional wetland buffer zone." The plaintiffs' response was that they had not conducted a "functional value assessment" of their project and that they had addressed the protection of wetlands interests as expressed in the State act. As noted above, the by-law requires more than the State act, and thus satisfaction of the act's requirements does not necessarily satisfy the interests protected by the by-law.

The plaintiffs have argued that protection of the buffer zone is only a means to the goal of protecting the wetland resource itself. To that end, the plaintiffs introduced testimony at trial that the wetland resource would not be harmed by their proposed project. Three persons testified on behalf of the plaintiffs regarding the impact of the plaintiffs' proposed project on the wetlands. Franklin Pond, a registered civil engineer who had done the original engineering design for the entire development, testified[14] that the original design of the drainage system accommodated the runoff from all of the lots in the subdivision and that the over-all drainage system for

having obtained a variance was one of the reasons their application was denied by the commission.

[14]Before the cited testimony, defense counsel had objected to all of Pond's testimony on the ground that it was irrelevant because the record cannot be supplemented on a review under certiorari. Counsel did not object to the cited testimony on the ground that it was impermissible opinion testimony, given that Pond had not been qualified as an expert. With respect to the relevancy issue, we note that counsel is correct regarding the review on certiorari, which is confined to the administrative record. *Commissioner of Rev.* v. *Lawrence*, 379 Mass. at 208-209. However, other claims were also before the court. The plaintiffs carry a heavy burden in establishing a takings claim — they must show that the challenged by-law is invalid as applied to their property because it does not substantially advance a legitimate State interest. We are not aware of any rule confining plaintiffs or defendants to the administrative record in arguing a takings claim. It is not inconceivable that a conservation commission's decision could be upheld on a review under certiorari, which considers only whether there are "substantial errors of law, apparent on the record . . ." *ibid.*, while failing under the more stringent standard applied in a takings claim.

all of the lots was adequate. He offered no specific testimony about lot 48 and did not testify as to the change in the character of lot 48 since either the time he had designed the over-all drainage system or since the time the wetlands replication had been completed on lot 47 and had crept onto lot 48.

Scott Rabideau, a self-described wetlands biologist who had prepared the NOI for lot 48 (submitted on August 12, 1992), opined that the project adequately protects the wetland resource area. He acknowledged that the plans for lot 48 were revised a number of times after the initial NOI was filed in August, 1992. Significantly, DEP, as well as the commission, had concerns about potential negative impacts of the November, 1992, revised plan. DEP's concerns were not allayed until the plan was again revised in June, 1993.

Marielle Stone, an environmental analyst at DEP, testified that, based on the November, 1992, plan submitted to DEP in connection with the plaintiffs' request for a superseding order of conditions, DEP was concerned about the structural integrity of the driveway, and about the need to install a culvert in order to prevent water from backing up. There was evidence that in April, 1993, DEP was concerned (based on the November, 1992, plan) about flooding to adjacent property owners, the project's impact on the wetlands resource, and possible interference of the water and sewer lines with the function of the culverts. As a result of and in response to DEP's concerns, the plaintiffs submitted a plan modified in numerous respects on June 4, 1993. There is no evidence in the record that the plaintiffs ever requested the commission to review the June 4, 1993, revisions, and on that basis to reconsider its denial of an order of conditions based on the by-law.

In the final conservation commission meeting on the proposal, held January 12, 1993, concerns were raised regarding the same issues identified by DEP based on its review of the November, 1992, plan.[15] It was further noted that the wetlands supported by the buffer zone were already marginal because of the poor quality of the replication work, and that,

---

[15]The grading of the septic system was criticized, as was the inadequacy of a gravity-fed sewer system; the adequacy of the drainage pipes was questioned, regarding their ability to prevent flooding of abutters' properties; and the functional ability of the buffer zone on lot 48 to protect the

since all the vegetation in the subdivision, except that on lot 48, had already been clearcut, this was the only quality buffer zone remaining in the entire subdivision. The commission found that the old growth habitat on the lot supported wildlife,[16] which in turn supports the ecosystem that supports the wetland. Lastly, the commission indicated that, based on the results of its soil auguring on the lot, it found the plaintiffs' map to be inaccurate with respect to drainage patterns and the seep area on lot 48. This in turn brought into question the accuracy of the plaintiffs' predictions about the impact of the drainage patterns on the wetland. For all of these reasons, the commission validly applied the by-law to the plaintiffs' property when it denied the order of conditions in its February 1, 1993, order citing, inter alia, negative impacts on ground water supply, storm damage prevention, prevention of pollution, and protection of wildlife habitat.[17]

ii. *Plaintiffs' reasonable investment-backed expectations.* In order to rise to the level of an unconstitutional regulatory taking, the investment-backed expectations frustrated by governmental regulation must be "reasonable and predicated on existing conditions," *Leonard* v. *Brimfield*, 423 Mass. at 155, not merely a "unilateral expectation or an abstract need." *Ibid.*, quoting from *Ruckelshaus* v. *Monsanto Co.*, 467 U.S. 986, 1005 (1984), quoting from *Webb's Fabulous Pharmacies, Inc.* v. *Beckwith*, 449 U.S. 155, 161 (1980). When FIC purchased the property in 1992, the Blackstone wetlands by-law was already in effect, including its 1991 amendment, adding § 119-12B (see note 10, *supra*), which requires buildings to be set back 100 feet from a wetlands resource. FIC therefore had no reasonable expectation that it could build in the buffer zone, or that its project would not be subject to the by-law. "[T]he government is not required to compensate an individual for denying him the right to use that which he has

wetlands on that lot, and the neighboring lot 47, was questioned, given the fact that the proposed driveway bisected the buffer zone.

[16]While protection of wildlife alone may not suffice to validate a challenged by-law, it is a consideration that "may not be disregarded." *Turnpike Realty Co.* v. *Dedham*, 362 Mass. at 229, quoting from *Barney & Carey Co.* v. *Milton*, 324 Mass. 440, 448 (1949).

[17]As noted earlier, the commission also validly refused the plaintiffs' application because the "one-hundred-foot setback requirement was not met and a variance was not issued by the Blackstone Conservation Commission."

never owned." *Flynn* v. *Cambridge*, 383 Mass. 152, 160 (1981). *Fragopoulos* v. *Rent Control Bd. of Cambridge*, 408 Mass. at 308. *Leonard* v. *Brimfield*, 423 Mass. at 155. See also *Steinbergh* v. *Cambridge*, 413 Mass. at 742. Neither do the plaintiffs contradict the defendants' assertion that when FIC purchased the property, the wetlands replication on lot 47 had already been completed, and had leaked onto lot 48.[18] The price FIC paid for the entire thirty-eight-lot parcel should have reflected the limitations imposed by the wetlands by-law. *Id.* at 743. The plaintiffs also could not reasonably believe that a 1987 order of conditions expiring in 1990 (before FIC purchased the property), and addressed only to the construction of the subdivision's roads (not to housing construction), would have the effect of granting them permission to build a house and driveway on lot 48 in 1992. The plaintiffs' reasonable investment-backed expectations were not frustrated by application of the wetlands by-law to their property.

iii. *Economic impact.* As noted above (see section 3[a] *supra*), the plaintiffs have not demonstrated that their economic loss was severe. Of the thirty-eight lots purchased, three were known to be unbuildable at the time of purchase. The commission's action had the effect of making just one additional lot unbuildable. "A reduction in the number of houses that an owner may build is a diminution in value and not a taking." *Moskow* v. *Commissioner of Envtl. Mgmt.*, 384 Mass. at 534 n.3. Nor were the plaintiffs deprived of all beneficial use of the property. The vast majority of the thirty-eight lots in the parcel (thirty-four lots) have been devoted to housing. Compare *Leonard* v. *Brimfield*, 423 Mass. at 156 (economic loss not severe where owner prevented from constructing houses on more than half her acreage). Moreover, lot 48 may still be devoted to woodland, wetland, and recreational purposes, which are beneficial uses, *Turnpike Realty Co.* v. *Dedham*, 362 Mass. at 235, or as additional acreage for residential abutters' properties, a use valued at $1,200 by the plaintiffs' appraiser, and an amount which the abutters assert they can afford to pay. See *S. Kemble Fischer*

---

[18]A map dated November, 1992, shows the lot 47 wetlands replication overflowing into lot 48. The plaintiffs' map (dated both "July, 1992" and "9/92") shows the lot 47 replication area ending at the border of lot 48. The defendants contend that this map was incorrect when drafted. The plaintiffs do not contend otherwise.

*Realty Trust* v. *Board of Appeals of Concord*, 9 Mass. App. Ct. 477, 481-482, cert. denied, 449 U.S. 1011 (1980).

iv. *Character of the governmental action.* "A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government." *Leonard* v. *Brimfield*, 423 Mass. at 156, quoting from *Penn Cent. Transp. Co.* v. *New York City*, 438 U.S. at 124. Here, no physical invasion of the plaintiffs' property has been alleged.

Thus, in view of the facts before us, the application of the wetlands by-law to the plaintiffs' property does not constitute a compensable taking under Federal law.

*Judgment affirmed.*