Bohn, J.
INTRODUCTION
This action is before this court for determination of cross motions for judgment on the pleadings filed by each of the parties in these consolidated actions. The plaintiffs, Richard F. Deconto, Denise A. Deconto and Burlwood Realty Corporation,[3] filed an action in the nature of certiorari, pursuant to G.L.c. 249, §4. That suit challenged the Burlington Conservation *634 Commission’s (Commission) positive Determination of Applicability of Article 22[4] of the Wetlands Protection By-laws (By-laws) of the Town of Burlington to parcels of land located adjacent to the Saw Mill Brook Conservation Area of that town. In their complaint, the plaintiffs argue that it was erroneous for the Commission to rule that Article 22 provides jurisdiction over the plaintiffs’ land. Specifically, the plaintiffs argue that the Commission’s positive determination that a stream abuts their property was not supported by the facts; that a “buffer zone” on which the Commission allegedly relied in reaching its determination does not exist; and, that the Commission’s definition of “stream” was arbitrary and capricious.
In its cross-complaint, the Commission-argues that the plaintiffs’ land borders vegetated wetlands and abuts a stream; and, that any alteration made to land within one hundred feet of the wetlands (the buffer zone) is therefore governed by Article 22 of the Burlington Wetlands Protection By-laws and the Massachusetts Wetlands Protection Act, G.L.c. 131, §40.
For the reasons set forth below, the Commission’s positive Determination of Applicability will be AFFIRMED.
BACKGROUND
A.Enforcement Order
On February 17, 1994, the Burlington Conservation Commission issued an enforcement order against the plaintiffs, pursuant to the Wetlands Protection Act (Act)[5] of the Commonwealth of Massachusetts, G.L.c. 131, §40 and Article 22 [6] of the Burlington Wetlands Protection By-laws, requiring them to cease and desist any activity affecting the wetland portion of their property and to stabilize the disturbed area within one hundred feet of a stream.[7] The plaintiffs’ land is located on Erin Lane in the Glen Cove Park Subdivision, which abuts the Saw Mill Brook Conservation Area.[8]
The Commission issued the Enforcement Order at issue after finding bordering vegetated wetlands (BVW) that start near Fox Hill School and run easterly towards the Glen Cove Park subdivision on land owned by the Town of Burlington. The Commission found that portions of that land, including the plaintiffs’ land on Lot A, are part of the Saw Mill Brook Conservation Area and that it contains a BVW and a stream that continues down-gradient to the conservation site. The plaintiffs did not appeal the enforcement order.
B.The Burlington Conservation Commission’s First Positive Determination of Applicability
On July 1,1994, Larry Cohen, on behalf of the Town of Burlington and the Burlington Conservation Commission, filed with the Burlington Conservation Commission a Request for Determination of Applicability of the State Act to the conservation land at Saw Mill Brook Conservation Area. (R. 94-5303 at 36.) On July 14, 1994, after a duly noticed public meeting, the Commission issued a positive Determination of Applicability,[9] finding that the Saw Mill Brook Area was covered by both the state legislation and the town by-laws and, therefore, the Commission had jurisdiction to regulate the area.
In making its determination with respect to the applicability of the regulations to the plaintiffs’ property, the Commission considered the minutes, correspondence and material relating to the Enforcement Order. In addition, the Commission reviewed the Jurisdictional Wetlands Determination Report prepared by Haley & Aldrich, a consulting environmental company hired by the plaintiffs to assess, map and flag the Saw Mill Brook Conservation site for wetlands. The Commission also walked the site, reviewed photographs of the flow of water and the maps of the town of Burlington, and considered aerial photography taken on April 17, 1989. The Commission found that the plaintiffs’ land abuts a stream and is subject to flooding and inundation.[10]
Although the Commission was in “basic agreement” with the findings made by Haley & Aldrich, the Commission disagreed with Haley & Aldrich’s conclusion.[11] The Commission found that the intermittent channel located adjacent to the plaintiffs’ land was a stream and, therefore lots 37A through 40A are subject to the Commission’s jurisdiction under both the State Act and the Burlington By-laws.
C.The Department of Environmental Protection’s Positive Superseding Determination of Applicability
On August 1, 1994, the Decontos filed a Request for Superseding Determination of Applicability with the Department of Environmental Protection (DEP), pursuant to 310 C.M.R. 10.05(7). In addition, on September 14, 1994, the plaintiffs filed Civil Action 94-5303, the first of the actions now before the court, pursuant to G.L.c. 249, §4, to appeal and challenge the Commission’s determination that their land is subject to the regulations under the Act and the By-laws of the town of Burlington. In that action, the plaintiffs argue that the Commission’s finding that a regulated “stream” abuts their property is arbitrary, capricious and unsupported by the evidence, thus making the Commission’s determination erroneous as a matter of law. The Commission has filed and served the certified record of proceedings in that case.[12]
On November 21, 1994 the DEP issued a positive Determination of Applicability, finding that “upon review of information provided by the parties, and upon observations made on the site, the Department determined that the property contains Areas Subject to Protection under the Act, namely BVW and Bank.” The DEP, however, disagreed with the Commission and found that a “stream,” as defined by the Act, was not located adjacent to the plaintiffs’ property. Based on the currently available information, the DEP concluded that, while the “channel contains several fea *635 tures of a stream,” the “portion of the channel between flags HA-9 through HA-22 is not a jurisdictional stream because it is not connected to the up-gradient wetland. ” The DEP also observed less than fifty percent vegetated wetlands between flags HA-8 and HA-9, and concluded that this section of the “so-called channel” is probably not located in BVW; however, the DEP indicated that a comprehensive boundary should be conducted to confirm the finding.
Notwithstanding its conclusion that a jurisdictional stream was not present, the DEP’s positive Superseding Determination of Applicability supported the Commission’s finding that certain areas of the land contain resource areas and BVW. The DEP indicated that a comprehensive delineation should be conducted to determine the precise boundary of the BVW.
D.The Burlington Conservation Commission’s Second Positive Determination of Applicability
On June 12, 1995, after the DEP found that a “stream” was not located adjacent to plaintiffs’ land, the plaintiffs filed a request for a second determination of applicability for the three lots, 37A, 38A and 39A. On July 3, 1995, the Commission again issued positive Determinations of Applicability for the three lots, finding that each lot is “within 100 feet of a stream channel on the Saw Mill Brook Conservation Area” and that “along the stream described in [the] decision there are bordering vegetated wetlands and flooding and land subject to inundation.” The physical location of the BVW, however, were neither identified nor were their characteristics described in the Commission’s Determination of Applicability.
On September 1, 1995, pursuant to G.L.c. 249, §4, the plaintiffs filed Civil Action 95-5129, the second of the two consolidated cases before the court, again appealing and challenging the Commission’s finding in its second determination of applicability. The plaintiffs essentially raise the same arguments in their second appeal as they raised in their first appeal. The plaintiffs maintain that the Commission’s positive Determination of Applicability was arbitrary and capricious and unsupported by the record, and assert that such findings are erroneous as a matter of law.
The complaints have been consolidated for review in this action on the parties’ cross motions for judgment on the pleadings.
DISCUSSION
E.Standard of Review Under Certiorari
Massachusetts G.L.c. 249, §4 permits an aggrieved party to bring an action in the Superior Court to correct errors in proceedings which are not otherwise reviewable by motion or by appeal. Cepulonis v. Commissioner of Correction, 15 Mass.App.Ct. 292, 293 (1983). In a review under certiorari, the court is limited to correcting “substantial errors of law apparent on the record adversely affecting material rights” of the petitioner. FIC Homes of Blackstone, Inc. v. Conservation Comm’n of Blackstone, 41 Mass.App.Ct. 681, 685 (1996), citing Commissioner of Revenue v. Lawrence, 379 Mass. 205, 208 (1979). The court may affirm or quash the proceeding or make “such other judgment as justice so requires.” G.L.c. 249, §4.
The appropriate standard of judicial review in certiorari cases may vary “according to the nature of the action for which review is sought." Forsyth Sch. of Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 217 (1989). Where the court reviews a governmental agency’s action, the test to be applied is whether the Commission acted in an “arbitrary and capricious” manner. See FIC Homes of Blackstone v. Conservation Comm’n of Blackstone, supra at 684. See also T.D.J. Development Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. 124, 128 (1994). The Commission’s decision is not arbitrary and capricious unless there is no ground which “reasonable men might deem proper" to support it. T.D.J. Development Corp. v. Conservation Comm’n of North Andover, supra.
Additionally, the plaintiff carries the burden of proof to show that the conditions are not reasonably related to the preservation and protection of the interests protected by the by-law. Id. at 129, citing Forsyth Sch. of Dental Hygienists v. Board of Registration in Dentistry, supra at 217-18.
F.The Issue Regarding the Commission’s Definition of Stream
The plaintiffs first argue that the Commission’s “overly broad” and “nonsensical” definition of “stream,” and its application of that definition to the plaintiffs’ case was arbitrary and capricious. The plaintiffs also assert that the Commission’s definition of “stream” was erroneous because it differed'from the definition given in the Massachusetts Wetlands Protection Act. G.L.c. 131, §40; 310 C.M.R. 10.04.
In support of their argument, the plaintiffs refer to sections of the Act which define “stream” as “a body of running water, including brooks and creeks, which moves in a definite channel in the ground due to a hydraulic gradient, and which flows within, into or out of an Area Subject to Protection Under M.G.L.c. 131, §40.” 310 C.M.R. 10.04. The plaintiffs contend that a stream must therefore have a “continuous flow,” or consist of a body of “running” water. The Commission, conversely, defined “stream” as “the path in a definable gradient, in which water flows, either continually or intermittently.” R. 94-5303 at 48.
The plaintiffs argue that the Commission’s definition of stream is erroneous because, according to the Commission’s interpretation, water need not be flowing at all in a definable gradient, and that, therefore, the Commission could always find a stream so long as such flow is present “intermittently.” The plaintiffs’ arguments fail.
*636 The plaintiffs read the definition of “stream” piecemeal, and neglect to read further the definition as defined under the Act. The Act defines stream as “a body of running water which does not flow throughout the year (i.e., which is intermittent) . . . except for that portion upgradient of all bogs, swamps, wet meadows and marshes.” 310 C.M.R. 10.04. (Emphasis added.) Therefore, contrary to the plaintiffs’ assertion, the Act does not ignore the possibility that a stream may be of an intermittent nature. More specifically, the Act does not define stream primarily as a “body of running water,” or that there need to be a continuous flow of water. As noted by the DEP, the important factor that must be considered in this action is whether the channel found by the Commission is “upgradient” of wetlands (e.g., bogs, swamps, wet meadows and marshes).
This court will review this action under an arbitrary and capricious standard, overruling the Commission’s decision only if the record could not reasonably support the Commission’s findings. T.D.J. Development Corp v. Conservation Comm’n of North Andover, supra at 128. Furthermore, this court will correct only substantial errors of law found in the record. FIC Homes of Blackstone v. Conservation Comm’n of Blackstone, supra at 685. Read in whole, the Commission’s definition of “stream” did not differ significantly from the definition given by the Act, and was certainly not arbitrary and capricious. The fact that the Commission defined stream as “a path in a definable gradient in which water flows continually or intermittently” is not so ambiguous, unclear or contrary to the definition provided by the Act that would warrant a finding that the Commission’s definition was erroneous.
G. The Issue Regarding the Inconsistency Between the Commission’s Finding of a Jurisdictional Stream and the DEP’s Finding of No Jurisdictional Stream
Next, the plaintiffs argue that the Commission’s definition of stream was directly contrary to the DEP’s finding in its positive Superseding Determination of Applicability; and that, therefore, the Commission is precluded from issuing a positive Determination of Applicability based upon its finding that a jurisdictional stream exists on the Saw Mill Brook Conservation land. Again, the plaintiffs’ argument fails.
Although the Commission’s definition of a stream differed slightly from that of the Act, the Commission’s determination that a stream was present on land abutting the plaintiffs’ lots was not arbitrary and capricious. The facts in the record reasonably support a finding that an intermittent stream was located adjacent to the plaintiffs’ property.
First, the Commission made a positive Determination of Applicability after conducting site surveys and reviewing the record, materials and reports. In particular, the Commission reviewed the reports made for the plaintiffs by Haley & Aldrich and, although agreeing with the majority of its findings, the Commission disagreed with Haley & Aldrich’s conclusion that the plaintiffs’ land does not border vegetated wetlands nor does it abut a stream. The members of the Commission walked the site and, on one occasion, conducted a “green dye” test i.e., a test in which two commissioners observed green dye move down “a definite stream which spread out to the stone wall in back of the property on Erin Lane.” This court will not overrule the Commission’s decision unless it is “based on a legally untenable ground." See Forsyth Sch. of Dental Hygienists v. Board of Registration in Dentistry, supra at 218, citing Gulf Oil Corp. v. Board of Appeals of Framingham, 355 Mass. 275, 277 (1969). The record reasonably supports the Commission’s rulings.
Second, in its positive determination opinion, the DEP disagreed with Haley & Aldrich’s conclusion that “sections of the channel between HA-9 and HA-22 do not contain features of a stream.”[13] The DEP surmised that the channel that the Commission found contained “several features of a stream, including a defined channel and hydraulic indicators such as stained and silty leaves and leaf piles,” but that “it is not a jurisdictional stream because it is not connected to the upgradient wetland.” The DEP’s findings, therefore, indicate that sufficient evidence was present to support the Commission’s determination of a stream.
Third, the DEP issued a positive Superseding Determination of Applicability, agreeing with the Commission that there are wetland resource areas on the site. The DEP found that portions of the area are located within an area of BVW and, thus, the parcel is subject to the jurisdiction of the Act. The DEP also indicated in its summary, that a “comprehensive wetland delineation would have to be performed ... to determine 1) if this area contains additional areas of BVW; and 2) whether portions of the nonjurisdictional channel ... lie within, or flow out of the BVW.” Moreover, based on photographs provided by the Commission which shows flooding on portions of the site, the DEP concluded that the site may also lie within the 100 year flood plain and may contain Bordering Land Subject to Flooding.[14]
The fact remains that even if a “stream” did not exist, as the plaintiffs argue, by issuing a positive Superseding Determination of Applicability, the DEP found that the plaintiffs’ land was subject to the jurisdiction of the Act and the Town By-laws. The positive Superseding Determination of Applicability of the DEP, therefore, supports the Commission’s positive Determination of Applicability.
H. The Commission’s Finding of a Buffer Zone
The plaintiffs argue that the Commission’s finding that the plaintiffs’ land is located in a one hundred feet buffer zone abutting BVW was arbitrary, capricious and erroneous as a matter of law. The plaintiffs assert that a buffer zone cannot be deemed to exist without an initial finding of an independent resource area (i.e., *637 stream) from which the buffer zone extends. The plaintiffs also argue, pursuant to Article 22, §7.6.1 of the By-laws, that, in order to find a “buffer zone,” the Commission had to first find a “bog, marsh, meadow or swamp” that in turn borders on a “creek, river, stream, pond, lake, or wetland” which according to the plaintiffs, the Commission failed to find in this action. In addition, the plaintiffs argue that the Town By-laws are not more stringent than the State Act, and thus the Act’s construction of Bordering Vegetated Wetland governs. Again, the plaintiffs’ argument fails.
The DEP’s positive Superseding Determination of Applicability supports the Commission’s determination and makes the plaintiffs’ argument moot. The DEP concluded that the plaintiffs’ land is subject to the Act, which provides the Commission with jurisdiction. The issue of whether a “buffer zone” was properly found is therefore irrelevant. The Commission need not derive its jurisdictional powers through the more stringent provisions of the Burlington By-laws,[15] instead the DEP’s positive finding provides additional jurisdictional powers to the Commission.[16]
Furthermore, even if the plaintiffs’ arguments had merit on this issue, the Commission’s determination may be overruled only if it were arbitrary and capricious. A decision is arbitrary and capricious only if it is “based on a legally untenable ground” or is “unreasonable [or] whimsical.” Forsyth Sch. of Dental Hygienists v. Board of Registration in Dentistry, supra at 218, citing Gulf Oil Corp. v. Board of Appeals of Framingham, 355 Mass. 275, 277 (1969).
Here, the Commission’s finding that the land at issue is within the jurisdictional “buffer zone” was reasonably supported by the Commission’s survey of the site area and review of the materials and reports compiled for the Enforcement Order. Again, the record shows that the DEP also issued a positive determination, agreeing with the Commission in finding that wetland resource areas exist on the Saw Mill Brook Conservation land and that the plaintiffs’ land abuts BVW. The Commission’s decision is not arbitrary and capricious.
In the present action, the record does not support, and the plaintiffs have failed to show, that the Commission acted in an arbitrary and capricious manner in finding that a stream abuts the plaintiffs’ land and that the land is not located within one hundred feet of a buffer zone. On the contrary, the record indicates that the plaintiffs’ land is subject to the Commission’s jurisdiction, which supports the positive Determination of Applicability of the plaintiffs’ land to the Burlington By-laws and the Massachusetts Wetlands Protection Act.
ORDER
For the reasons set forth above, it is hereby ORDERED that the defendants’ motion for judgment on the pleadings is AFFIRMED, and plaintiffs’ cross motion for judgment on the pleadings is DENIED.

On October 22, 1997, the court granted a Joint Motion for Partial Dismissal of claims by plaintiff Burlwood Realty Corporation. The Decontos are the only plaintiffs who remain in this action.

Article 22 has been renumbered Article 14.

Under the Act, any activity, except for minor activities meeting the requirements of 310 C.M.R. 10.58(6)(b), proposed or undertaken within an area specified in 310 C.M.R. 10.02(1) (the Wetlands Areas) which will remove, fill, dredge or alter that area, is subject to Regulation under G.L.c. 131, §40 and requires a filing of a Notice of Intent.
Furthermore, any activity, other than minor activities identified in 310 C.M.R. 10.58(6)(b), proposed or undertaken within 100 feet of an area specified in 310 C.M.R. 10.02(l)(a) (the Buffer Zone) which, in the judgment of the issuing authority, will alter an area subject to protection under the Act, is therefore subject to protection of the Act and requires a filing of a Notice of Intent.

Article 22 of the By-laws states in relevant part that “(n]o person shall remove, fill, dredge, build upon or alter any bank, fresh water wetland, marsh, bog, wet meadow, swamp, creek, river, stream, pond or lake or any land under said waters, or any land bordering thereon as hereinafter defined, or any land subject to flooding or inundation . . .”
“Alter” shall be defined as including but not limited to one or more of the following actions upon areas described in General Laws Chapter 131 Section 40:
7.4.1 The removal, excavation or dredging of soil, sand, gravel, or aggregate material of any kind;
7.4.2 The changing of pre-existing drainage characteristics, flushing characteristics, salinity distribution, sedimentation patterns, flow patterns and flood storage retention areas;
7.4.3 The drainage or disturbance of the water level or water table, the dumping or filling with any material which could degrade the water quality;
7.4.4 The driving or piling, erection of buildings or structures of any kind;
7.4.5 The placing of obstruction whether or not they interfere with the flow of water;
7.4.6 The destruction of plant life, including the cuttings of trees, which might result in environmental damage to the land or a part thereof rendered by this By-law;
7.4.7 The changing of water temperature, biochemical oxygen demand and other natural characteristics of the receiving water;
7.4.8 Any activities, changes or work which pollutes any stream or body of water, whether located in or out of the town of Burlington.
“Bordering” is further defined as including “any land within either of the following: 100 feet horizontally lateral from the edge of any bog, marsh, meadow, or swamp bordering on a creek, river, stream, pond or wetland ... [or] 100 feet horizontally lateral from the water elevation of the 100 year storm or which ever is the greater distance of (a) or (b).”

The Burlington Conservation Commission has defined “Wetland” as follows:
In general terms, freshwater wetlands include marshes, wet meadows, swamps, bogs and similar areas where groundwater or surface water create a wet environment *638 that supports a plant community adapted to these conditions. The town of Burlington has defined wetland in the 1988 General Bylaw Amendment, Article XXII as follows:
the term marsh, freshwater wetland, swamp, wet meadow, bog, as used in this by-law shall be defined as defined in General Laws Chapter 131, Section 40.

The area of land at issue is divided into three parcels. The Decontos own lot 38A, and the Burlwood Realty Corporation owns lots 37A and 39A.
The Commission has on several occasions notified the developer that the subdivision, known as Glen Cove Park, is subject to the jurisdiction of the Massachusetts Wetlands Protection Act, G.L.c. 131, §40 and Article 22 of the Town By-laws. On December 17, 1992, a lot by lot review of the subdivision was made of the remaining undeveloped lots. A list was generated as to which lots would be required to file with the Commission before work could proceed on that lot — the Decontos’ lot 38A was included on that list.

 A positive Determination of Applicability is issued when the proposed work is very close to a resource area and/or the changes of an impact on the resource area is great. A positive determination indicates that the land surveyed is subject to the jurisdiction of the Act or By-law.
A negative conditional Determination of Applicability is issued when either the Wetland Protection Act does not apply or that Act applies, but the proposed work is far from any resource area and the possibility of damage from the proposed work is small.

The Commission defined “stream" as “the path in a definable gradient, in which water flows, either continually or intermittently.”
Massachusetts regulations 310 C.M.R. 10.04 define a “stream” as:
[A] body of running water, including brooks and creeks, which moves in a definite channel in the ground due to a hydraulic gradient, and which flows within, into or out of an Area Subject to Protection Under M.G.L.c. 131, §40. A portion of a stream may flow through a culvert or beneath a bridge. Such a body of running water which does not flow throughout the year (i.e., which is intermittent) is a stream except for that portion upgradient of all bogs, swamps, wet meadows and marshes.

Haley & Aldrich investigated the site at issue to determine the extent of jurisdictional wetlands and observe the nature of the surface water drainage on the property adjacent to the eastern side of residential lots 37A through 40A along Erin Lane. Haley & Aldrich mapped and flagged (numbers HA-1 to HA-23) the site for wetlands.
After assessing the area, Haley & Aldrich opined that the surface drainage between flags HA-7 and HA-22 is not a regulated stream under the Massachusetts Wetlands Protection Act because it does not have a definite channel over its entire length between two identified wetland resource areas. They further found that there are no bordering vegetative wetlands or resource areas regulated or protected under the Act.

Plaintiffs submitted the findings of the DEP’s positive Superseding Determination of Applicability, which was not included in the certified record, but was relied upon by the Commission in making its determination.

 “HA-9" and "HA-22" refer to the flags that Haley & Aldrich used as visual guides to assess and map the property for wetlands.

Accordjng to the DEP, an analysis of a 100-year, 24-hour storm event would have to be conducted to make a conclusive determination.

Contrary to plaintiffs’ assertion, this court finds that the By-laws are more stringent than the Act. The By-laws contain (1) provisions which govern a “buffer zone”: and (2) a more stringent definition for the term “alter” is provided in the By-laws than is defined in the Act.

It is well established that municipalities may enact more stringent requirements than those provided in the state act. FIC Homes of Blackstone, Inc. v. Conservation Comm'n of Blackstone, supra at 686. “When a local conservation commission rests its decision on a wetlands by-law that provides greater protection than the act, its decision cannot be preempted by a DEP superseding order.” Id. at 687. Therefore, because the Burlington By-laws are more stringent than the state act, the Commission’s decision cannot be preempted by the DEP superseding order.