Josephson, J.
This case arises out of an Order of Abatement issued by the defendant, City of Leominster Board of Health (Board), limiting the plaintiffs, United Comb & Novelty (United Plastics), warehouse activities at its 46 Industrial Road facility in Leominster, Massachusetts. United Plastics seeks judicial review in the nature of certiorari, pursuant to G.L.c. 249, §4, of the Board’s decision. Before the court are cross motions for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c). The Board also moves to strike evidence submitted by United Plastics that is not part of the administrative record. For the reasons below, United Plastics’ motion for judgment on the pleadings is DENIED, the Board’s motion for judgment on the pleadings is ALLOWED, and the Board’s motion to strike is ALLOWED.
BACKGROUND
United Plastics began trucking operations at the 46 Industrial Road warehouse in January 2002. The facility is located in an industrial zone. However, the other side of the street is zoned for residential use, and in fact contains a number of homes directly across the road from the facility’s upper loading docks.[2]
Prior to United Plastics’ occupation of the facility starting in January of 2002, another company engaged in similar operations leased the property. In January 2001, neighbors began complaining to city officials about problems with United Plastics’ predecessor, including: trucks idling in the street for long periods of time, trucks shining their headlights directly into homes while backed up to the loading docks, trucks using private driveways to turn around and maneuver into position in front of the docks, *234 trucks needing to make several approaches to the docks with reverse signals sounding, and loud noises generated by trucks backing into the docks. Neighbors complained that this activity occurred at all hours of the day and night. The complaints and the city’s responses to them are memorialized in a series of letters included in the record of the hearing at issue in this case.
The neighbors’ complaints continued after United Plastics began operations at the property. United Plastics made efforts to mitigate its problems with neighbors, including hiring a security officer, positing directional signs for their drivers, and communicating with neighbors. Nevertheless, the residential neighbors continued to complain of repeated incidents similar to those experienced while the former tenants occupied the premises. After little more than a month, the Board notified United Plastics that it would hold a hearing on February 20, 2002 to determine whether United Plastics’ business practices constituted a nuisance or violated state or local law.
The hearing commenced with a summarization of the history of complaints, including the time period before United Plastics began operating at the property, by the director of the Board. Seven neighbors testified about the disturbances caused by the trucking operations, particularly with respect to their inability to sleep undisturbed. A representative of United Plastics testified as to the efforts the company made to respond to the needs of its neighbors, but insisted that the company needed to operate at the site until at least midnight. The director of the Board then recommended that the Board find that United Plastics’ operations created a public nuisance pursuant to G.L.c. 111, §122, and violated local restrictions on air and noise pollution and loud and excessive noise generated during the loading of vehicles, pursuant to City Ordinances 3-2 and 14-8(9}. He further recommended a reduced schedule of operations in order to allow the neighbors some hours of uninterrupted sleep. The proposed hours included: 7 a.m. to 10 p.m. weekdays, 7 a.m. a.m. to 1 p.m. Saturdays, and one Sunday per month from 7 a.m. to 2 p.m. The Board voted unanimously to accept both proposals without further deliberation.
A written Order of Abatement issued following the hearing. The Order described as the basis for the Board’s decision the generalized complaints of the neighbors, and several specific events occurring after United Plastics assumed occupancy of the building.
On March 28, 2002, after a hearing on United Plastics’ motion for preliminary injunction, the court (Fecteau, J.) modified the Order to extend the permissible hours of operation until 3 p.m. on Saturdays. The court also extended the Sunday hours to .include every Sunday from 11 a.m. to 3 p.m. The court limited all weekend activity to the lower docks. The parties continued negotiation, and the Board agreed to extend weekend hours at the lower loading docks to 5 p.m. On October 8, 2002, the court (Fecteau, J.} denied United Plastics’ motion to modify the injunction to include an additional three hours of operating time on Sundays at the lower docks, and to allow operation of the upper docks on Saturdays. United Plastics currently is allowed to operate during the following hours: 7 a.m. to 10 p.m. weekdays, 7 a.m. to 5 p.m. Saturdays at the lower loading docks only, and 11 a.m. to 5 p.m. Sundays at the lower loading docks only.
DISCUSSION
A. The Board’s Motion to Strike
The Board moves to strike two exhibits appended to the plaintiffs motion for judgment on the pleadings: a letter from the City of Leominster Office of the Health Department explaining that no work activity could take place at the premises beyond the hours stated in the Order, and copies of civil citations for alleged violations of city ordinances. The documents were created some ten months after the Board issued its decision. The Board also objects to several factual allegations made in the plaintiffs memorandum that are not contained in the administrative record.[3] On review in the nature of certiorari pursuant to G.L.c. 294, §4, the court’s review is limited to the record. See, e.g., Gloucester v. Civil Serv. Comm’n, 408 Mass 292, 297 (1990); Goldie’s Savage, Inc. v. Bd. of Selectman of Walpole, 31 Mass.App.Ct. 726, 734 (1992) (noting that plaintiff may have been permitted to conduct discovery and submit extrinsic evidence had he presented a cognizable constitutional claim}. The question for decision by this court is whether there is error of law apparent on the face of the administrative record. Facts not before the Board, and events occurring after the hearing, do not inform this inquiry. See Morrisey v. State Ballot Law Comm’n, 312 Mass. 121, 127 (1942). Therefore, the Board’s motion is allowed and the stricken evidence is not considered in the analysis below.
B. Cross Motions for Judgment on the Pleadings
On a complaint for review in the nature of certiorari pursuant to G.L.c. 249, §4, the standard of review varies according to the nature of the action for which review is sought. Forsyth. School for Dental Hygienists v. Bd. of Registration of Dentistry, 404 Mass. 211, 217 (1989). Where the statute or ordinance governing the agency action refers to a broad standard rather than narrow and objective criteria to be applied, judicial review does not assess the strength of the evidence supporting the action, and instead reviews under the arbitraiy and capricious standard. See Caswell v. Licensing Comm’n for Brockton, 387 Mass. 864, 877-78 (1983). Courts generally review the action of a local board under the arbitrary and capricious standard. See, e.g. Comm’r of Revenue v. Lawrence, 379 Mass. 205, 208 (1979).
*235 The Board acted pursuant to the authority vested in it by G.L.c. 111, §122, which requires boards of health to “examine into all nuisances” and “destroy, remove or prevent the same as the case may require . . .” As support for its characterization of the noise generated by the plaintiffs business as a nuisance, the Board also relied on two local ordinances. The first prohibits loud and excessive noise in connection with the loading or unloading of any- vehicle. City of Leominster Ordinance c. 14, §14-8(b)(9). The director of the board of health is authorized to enforce this chapter. Id. The second prohibits any noise that interferes with sleep or creates air pollution. City of Leominster Ordinance c. 3, §3-2. The director of the board of health has the authority to “issue orders and enforce” this chapter. Id. No additional requirements regarding the method of enforcement are included in either chapter. The Board acted under a broad standard, rather than narrow and objective criteria, and the appropriate inquiry is therefore whether the Board’s decision was arbitrary and capricious. Compare, e.g., T.D.J. Development Corp. v. Conservation Comm’n of North Andover, 36 Mass. App.Ct. 124, 128-29 (1994) (arbitrary and capricious standard applied where commission acted under a bylaw allowing the commission to impose “such conditions as it deems reasonably necessary” to protect the water supply and wildlife habitat), with Black Rose, Inc. v. City of Boston, 433 Mass. 501, 503-05 (2001) (substantial evidence standard applied where board’s revocation of an entertainment license pursuant to statute required finding that the license has adversely affected the public health, safely, or order in one of three specifically enumerated ways).
When applying the arbitrary and capricious standard, the reviewing court is not authorized to weigh evidence, find facts, exercise discretion, or substitute its judgment for that of the administrative body. FIC Homes of Blackstone, Inc. v. Conservation Comm’n of Blackstone, 41 Mass.App.Ct. 681, 684-85. Rather, the court’s role is limited to determining whether the decision is legally erroneous, or is so devoid of factual support as to be arbitrary and capricious. See Id. A decision is not arbitrary and capricious unless there is no ground which “reasonable men might deem proper” to support it. T.D.J. Development Corp., 36 Mass.App.Ct. at 128. The burden is on United Plastics to demonstrate that the Board’s decision is not reasonably related to the purpose of the authorities under which the Board acted. Forsyth School of Dental Hygienists, 404 Mass, at 218.
United Plastics contends that the evidence upon which the Board found a nuisance and determined that United Plastics operations violated local ordinances is insufficient to support the Board’s action. United Plastics objects to the Board’s consideration (as evidenced by their inclusion in the record of the proceedings) of eight documents pre-dating United Plastics’ occupation of the Industrial Road site, and to testimony related to the histoiy of problems at the site. However, the Board’s Order describes the evidence upon which its decision is based, all of which relates specifically to the conduct of United Plastics. The Board’s decision was based on evidence properly before it, and therefore was not erroneous on this basis. Cf. Caswell, 387 Mass, at 876 (case remanded because reviewing court could not determine from written decision whether based on improper grounds or not).
United Plastics contends that, once evidence of their predecessor’s conduct is eliminated from the record, the remaining evidence is insufficient to support the Board’s decision. The remaining evidence included the testimony of many neighbors to the continuing nature of the problems, correspondence between neighbors and United Plastics in which United Plastics admits that it runs a noisy operation into the late hours of the night, and a one-month log kept by a neighbor cataloging the disturbances emanating from United Plastics’ business. The Board’s decision is based on grounds that “reasonable men might deem proper” to support it, and is therefore not arbitrary and capricious for lack of adequate factual support. See T.D.J. Development Corp., 36 Mass.App.Ct. at 128.
United Plastics also argues that the Board’s decision is arbitrary and capricious because it “randomly” limited the hours of operation beyond normal sleeping hours and was issued merely to “placate” a few neighbors. United Plastics’ burden is to demonstrate that the Order is not reasonably related to the state statute and local ordinances which authorize the Board to act. Forsyth School of Dental Hygienists, 404 Mass, at 217-18. The Order states that the hearing was undertaken to address complaints of noise in the night and early morning hours. At the hearing, the Director recommended restricted hours so that the neighbors could “get some hours of uninterrupted sleep.” United Plastics objects to the Board’s failure to offer an explanation for limiting United Plastics’ operations beyond normal sleeping hours. However, on their faces, the local ordinances prohibit the type of injurious noise apparently emanating from United Plastics at any time of day, and do not purport to dictate the manner in which the Board is entitled to enforce them. It is rational to conclude that, given the conflict between United Plastics’ location in an industrial zone, with its proximity to its residential neighbors resulting in a nuisance and violation of noise ordinances, the Board issued an Order which sought to balance the interests of both parties. The Board is entitled to all rational presumptions in favor of its interpretation of the authority under which it acted. Fafard v. Conservation Comm’n of Reading, 41 Mass.App.Ct. 565, 572 (1996). The manner in which the Board enforced its ordinances was therefore not arbitrary and capricious.
*236 ORDER FOR JUDGMENT
It is therefore ORDERED that the plaintiffs motion for judgment on the pleadings be DENIED and the defendant’s cross motion for judgment on the pleadings be ALLOWED. It is further ORDERED that the defendant’s motion to strike be ALLOWED.

 One half of United Plastics’ loading docks face Industrial Road and the residential neighbors across the street. The other half of the docks, referred to as the “lower docks,” are on the side of the building, below street level, and face a wooded, unoccupied lot.

 The allegations are as follows: that there is no interior access between the upper and lower loading docks and lack of access to the upper docks sometimes shuts down the operation: that several other industrial users with similar trucking practices are located on Industrial Rd.; and that the Board admitted to United Plastics that it issued the Order merely to placate a few neighbors.