Gershengorn, J.
INTRODUCTION
Plaintiff Hobbs Brook Farm Property Company Limited Partnership (“HBF”) filed this action in the nature of certiorari pursuant to G.L.c. 249, §4 seeking judicial review of a June 27, 2000 Order of Conditions issued by defendant Lincoln Conservation Commission (“the Commission”) denying HBF’s application for permission to develop two residential lots, including the upgrade of an existing bridge crossing Hobbs Brook. This matter is before the court on the parties’ cross motions for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c). For the reasons discussed below, the plaintiffs motion for leave to present additional evidence is ALLOWED in part and DENIED in part. Further, the plaintiffs motion for judgment on the pleadings is ALLOWED and the defendant’s cross motion for judgment on the pleadings is DENIED.
PLAINTIFF’S MOTION TO PRESENT ADDITIONAL EVIDENCE
As a threshold matter, HBF moves for leave to supplement the administrative record and present additional evidence in the form of the administrative records from two other proceedings. First, HBF seeks to admit the administrative record of the Department of Environmental Protection’s (“DEP”) issuance of a May 8, 2002 Superseding Order of Conditions approving the project at issue in this case under the Wetlands Protection Act, G.L.c. 131, §40 (“WPA”). HBF also seeks to admit the administrative record of the Commission’s November 15, 2001 decision with respect to an unrelated project in which it approved construction of a bridge over Hobbs Brook to access Mill Street, a public way.
Review in the nature of certiorari pursuant to G.L.c. 249, §4 is available for judicial or quasi-judicial proceedings where no other reasonably adequate remedy is available, and review is necessary to correct errors of law apparent on the record and adversely affecting material rights. Walpole v. Secretary of Executive Office of Environmental Affairs, 405 Mass. 67, 72 (1989); FIC Homes of Blackstone, Inc. v. Conservation Comm’n of Blackstone, 41 Mass.App.Ct. 681, 684 (1996), rev. den., 424 Mass. 1104 (1997). The reviewing judge is ordinarily limited to what is contained in the record of proceedings below. Police Comm’r of Boston v. Robinson, 47 Mass.App.Ct. 767, 770 (1999); Board of Selectmen of Oxford v. Civil Service Comm’n, 37 Mass.App.Ct. 587, 588 (1994). Of critical importance in this case, however, is a determination of whether the Lincoln Wetlands Bylaw as applied to the project at issue is more restrictive than the WPA as applied to the project, and whether DEP’s superseding order preempts the Commission’s authority to regulate the project. HBF’s motion to present evidence concerning the DEP administrative record is therefore ALLOWED to the limited extent that the record is relevant to preemption. In considering the DEP record, however, this Court will not rely on and gives no deference to any substantive rulings by the DEP with respect to preemption issues.
HBF further contends that admission of the Mill Street administrative record is necessary to show that the Commission does not apply a uniform standard to all wetlands crossings and acted arbitrarily and capriciously with respect to HBF’s project. A decision is arbitrary and capricious if it manifestly lacks evidentiary support in the record or if it is driven by considerations extraneous to the applicable regulatory scheme, so that the basis for action is not uniform and predictable. Bailarin, Inc. v. Licensing Bd. of Boston, 49 Mass.App.Ct. 506, 512-13 (2000); Fafard v. Conservation Commission of Reading, 41 Mass.App.Ct. 565, 568 (1996). Based on the parties’ description of the Mill Street Bridge project, that project was substantially different in nature from HBF’s project because it involved the need to rebuild, on an emergency basis, a bridge serving as a public access road for the entire town. The record of the administrative proceedings in that case thus appears to have little probative value with respect to whether the Commission arbitrarily denied HBF’s project. Accordingly, given the limited scope of judicial review under G.L.c. 249, §4, HBF’s motion to present the Commission’s administrative record of the Mill Street Bridge project is DENIED.
BACKGROUND
HBF is the record owner of a parcel of land located along the northerly side of the Cambridge Turnpike (Route 2), shown as Lots 1, 2, 3, 4 and 5 on a plan of *381 land dated April 16, 1997, entitled, “Plan of Land in Lincoln, Massachusetts Prepared for Hobbs Brook Farm Property Company Limited Partnership” and recorded in the Middlesex South Registry of Deeds, Plan No. 707 of 1998 at Book 28791, page 416.[1]
On April 27, 1999, HBF submitted a Notice of Intent to the Commission seeking permission to construct a common driveway on an existing cart path off Route 2, three individual driveways, and stormwater management structures in order to develop houses on Lots 1,2 and 3. The proposed work was to occur within the Bordering Vegetated Wetlands Buffer Zone protected by both the WPA and Article XVIII of the Lincoln Bylaw (“the Bylaw”). On July 21, 1999, the Commission issued an Order of Conditions under the WPA and the Bylaw permitting construction of a bituminous driveway, no wider than 16 feet, along the existing cart path.
On December 15, 1999, HBF submitted a second Notice of Intent (“the NOI") to the Commission seeking permission to develop Lot 4 and construct a 16’ x 60’ common driveway, two individual driveways and a well. The proposed work was to occur within the Bordering Vegetated Wetlands Buffer Zone and within a “Riverfront Area,” a resource protected by the WPA and defined as the area measured outward horizontally for 200 feet from Hobbs Brook’s mean annual high-water line. Hobbs Brook and its associated wetlands have been classified by the state as Outstanding Resource Waters. In addition, Hobbs Brook is a tributary to the Cambridge Reservoir and is therefore a critical resource for the protection of the City of Cambridge’s public drinking water supply.
The Commission requested that HBF amend the NOI to show any plans relating to the development of Lot 5. Accordingly, on April 5, 2000, HBF submitted a Supplemental NOI concerning the proposed construction of single-family dwellings on Lots 4 and 5. The Supplemental NOI proposed an extension of the common driveway along the cart path, the construction of two private driveways and a well, and improvement of an existing wooden bridge crossing Hobbs Brook in order to access the buildable portion of Lot 5 (collectively, “the Project”). The proposed activity was to occur in the Bordering Vegetated Wetland Buffer Zone and within 100 feet of the bank of Hobbs-Brook. The Supplemental NOI asserted that the construction of the new driveway and bridge improvement were eligible to be treated as a “limited project” under the WPA pursuant to 310 Mass. Code Regs. §10.53(3). Nonetheless, the Supplemental NOI detailed the ways in which the Project met the WPA Riverfront Area performance standards set forth at 310 Mass. Code Regs. §10.58(4). The Supplemental NOI also contained an alternative proposal for crossing Hobbs Brook via a concrete arch span bridge.
Due to its ongoing concerns about the Project, the Commission asked its wetlands specialist, Paul Mc-Manus (“McManus”) of EcoTec, Inc., to conduct a wetlands review. McManus presented his report to the Commission at its May 17, 2000 hearing. McManus concluded that the proposed extension of the common driveway would deviate from the footprint of the existing cart path, thereby causing a substantial loss of vegetation and having a significant adverse impact on wetlands within the 50-foot buffer zone protected by the Bylaw. With respect to improvement of the bridge, McManus concluded that excavation at the proposed location and depth would pose a significant threat to the banks of Hobbs Brook. Finally, McManus disputed HBF’s conclusion in the Supplemental NOI that there were no practicable substantially equivalent economic alternatives to the Project.
At the May 17 hearing, HBF raised questions about the Commission’s legal authority to have its agent, McManus, enter HBF’s property without permission. HBF disputed McManus’s conclusion that HBF failed to show a lack of alternatives to crossing Hobbs Brook. A representative from HBF’s consultant, Wetlands Preservation, Inc., outlined the reasons that the Project adequately protected the relevant Bylaw interests without having significant adverse impacts on those interests. The Commission raised concerns that the proposed concrete bridge with footings would necessarily impact the bank of Hobbs Brook, particularly during the construction phase. The Commission further expressed doubts that the Project involved merely an upgrade of the existing bridge, thus qualifying as a “limited project.” The Commission and HBF also spent significant time debating the proper scope of the “no practical and sustainably equivalent economic alternative” requirement. Finally, HBF submitted an affidavit by its professional engineer stating that he had several conversations concerning the Supplemental NOI with Chip Norton of the Cily of Cambridge Water Department, and the City did not believe that the Project would adversely impact its water supply. Rather, the City had only technical concerns with certain aspects of the proposed drainage calculations. The Commission then adjourned the hearing until June 7.
On June 6, 2000, HBF submitted to the Commission a “Wetland and Buffer Zone Impact Assessment: Lots 4 and 5" prepared by Wetlands Preservation, Inc. which concluded that the proposed Project would have no significant adverse impact, immediate or cumulative, to the wetlands interests protected by the WPA and the Bylaw.
At the final hearing on June 7, 2000, HBF protested that Eco-Tec, as agent for the Commission, had violated HBF’s constitutional rights by entering HBF’s land without notice or permission. HBF then responded to the various points raised in McManus’s report. HBF reasserted that the Project qualified as a “limited project” because it was an upgrade of a long-existing bridge within the original footprint and there *382 were no alternative configurations of the lots which would avoid the need to cross Hobbs Brook. HBF further asserted that, in any event, the Project complied with all requirements of the WPA and the Bylaw. Finally, HBF submitted two additional plans for alternative bridges: a wooden stringer bridge with minimal footing and a maintenance plan for the existing bridge. The Commission then closed the hearings on the Project. On June 16, 2000, HBF submitted revised drainage calculations to the Commission addressing the technical concerns raised by the City of Cambridge.
The Commission deliberated at its June 21, 2000 meeting, evaluating the Project separately under the Bylaw and the WPA. Under the Bylaw, the Commission found only minimal impacts on the wetlands with respect to the development of Lots 2 and 3. With respect to Lot 4, however, the Commission concluded that HBF’s use of best management practices for clearing and grading was insufficient to demonstrate that the wetlands would not be significantly impacted, and that HBF had failed to overcome the presumption that work within the 50-foot buffer zone would adversely affect wetlands interests. With respect to the crossing of Hobbs Brook, the Commission found that the construction of the proposed bridge would adversely impact the banks of the brook, and that none of the proposed alternatives alleviated this problem.
Under the WPA, the Commission concluded that the Project did not qualify as a limited project. The Commission concluded that with respect to Lots 2 and 3, HBF overcame the presumption that the proposed development would have an adverse impact on the resources protected by the WPA. The Commission further concluded that HBF had failed to demonstrate that the Project would have no significant adverse impact on the riverfront area or overcome the presumption in the WPA that there is a significant adverse impact.
On June 27,2000, the Commission issued an Order of Conditions approving the development of Lots 2 and 3 but denying the Project to develop Lots 4 and 5. The Commission concluded that the bridge crossing was not a “limited project” pursuant to 310 Code Mass. Regs. §10.53(3) and that construction of the bridge would result in significant adverse effects to the protected riverfront resource areas. The Commission concluded that HBF failed to meet its burden under §11 of the Bylaw to prove by a preponderance of the credible evidence that the Project would not have a significant adverse effect, immediate or cumulative, upon the wetlands values protected by the Bylaw, in light of the presumption in §2 of the Bylaw that work within the 50-foot buffer zone around Hobbs Brook would have a significant adverse impact on the wetlands. The Commission concluded that HBF failed to demonstrate that the alternative concrete arch span bridge would not have an adverse impact on the wetlands or that the construction-related activity associated with this bridge could be confined within the proposed zone. The Commission stated that HBF failed to provide sufficient information to enable it to consider the two additional bridge alternatives submitted on June 7. The Commission further concluded that HBF failed to meet its additional burden under §11 of the Bylaw to show that there is no feasible alternative to the proposed activity having materially less adverse effect on the wetland values protected by the Bylaw.
On July 12, 2000, pursuant to 310 Code Mass. Regs. § 10.05 (7), HBF applied to DEP for a superseding order of conditions under the WPA, contending that the Commission’s June 27, 2000 Order of Conditions was inconsistent with the WPA because the Project qualified as a “limited project” and even if not evaluated as a limited project, the Project met all applicable WPA performance standards.
On August 11, 2000, HBF filed this Superior Court action seeking relief in the nature of certiorari in Count I, alleging a violation of procedural due process in Count II, seeking compensation for a taking of property in Count III, and seeking a declaratory judgment in Count IV that the Commission violated its constitutional right to be free from warrantless searches.
DEP performed a site evaluation of Lots 4 and 5 on October 17, 2000. On October 23, DEP and the Commission moved to stay the certiorari appeal in this Court under the Bylaw because DEP had jurisdiction to review the matter pursuant to G.L.c. 131, §40. This Court (Graham, J.) granted that stay.
DEP ultimately concluded that the Project qualified as a “limited project” under 310 Code Mass. Regs. §10.53(3)(e) because there was no other means of access with less wetlands impacts to a substantial area of developable upland on Lot 5. DEP found that the Project would not have an adverse impact on the Riverfront Area so long as a Riverfront Area Revegetation Plan was implemented. Accordingly, on May 8, 2001, DEP issued a Superseding Order of Conditions permitting development of Lots 4 and 5 under the WPA. In doing so, DEP approved the construction of a 38-foot steel stringer bridge, a different design than that considered and rejected by the Commission.
On May 22, 2001, the Commission filed a timely request for an administrative hearing. DEP and the Commission moved to stay DEP’s administrative appeal pending this Court’s ruling on HBF’s petition for certiorari review with respect to the denial of the Project under the Bylaw. On April 29, 2002, a DEP administrative law judge denied that motion to stay pursuant to the Division of Wetlands and Waterways’ Appeal Stays Policy (DW 89-1), concluding that the Commission had not denied the Project under a local bylaw that was more stringent than the Act. On August *383 11, 2003, DEP allowed the Commission’s motion to withdraw its appeal,[2] making the May 8, 2001 Superseding Order of Conditions final. DEP did not need to review the administrative law judge’s interlocutory rulings on the motion to stay.
DISCUSSION
Pursuant to G.L.c. 249, §4, this Court has jurisdiction to review decisions of a local conservation commission under a wetlands bylaw. FIC Homes of Blackstone, Inc. v. Conservation Comm’n of Blackstone, 41 Mass.App.Ct. 681, 684 (1996), rev. den., 424 Mass. 1104 (1997). The standard of review under G.L.c. 249, §4 varies according to the nature of the action for which review is sought. Caswell v. Licensing Comm’n for Brockton, 387 Mass. 864, 877 (1983); FIC Homes of Blackstone, Inc. v. Conservation Comm’n of Blackstone, 41 Mass.App. at 684. Where the action sought to be reviewed is the conservation commission’s grant or denial of an order of conditions, the substantial evidence standard applies. Lovequist v. Conservation Comm’n of Dennis, 379 Mass. 7, 17 (1979); T.D.J. Develop. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. 124, 128, rev. den., 418 Mass. 1103 (1994). However, where the action sought to be reviewed is analogous to the granting of a special permit, as in the commission’s exercise of discretion in imposing specific conditions to protect the wetlands, an arbitraiy and capricious standard applies. Fafard v. Conservation Comm’n of Reading, 41 Mass.App.Ct. 565, 568 (1996); T.D.J. Develop. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. at 128.
HBF first contends that because DEP issued a superseding order of conditions, and the Bylaw is no more stringent than the WPA, DEP’s order is binding on the Commission. The WPA establishes minimum statewide standards for wetlands protection, leaving local communities free to enact more stringent requirements. FIC Homes of Blackstone, Inc. v. Conservation Comm’n of Blackstone, 41 Mass.App. at 686; T.D.J. Develop. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. at 125-26. DEP has the final say with respect to whether a project complies with the statewide standards set by the WPA. DeGrace v. Conservation Comm’n of Harwich, 31 Mass.App.Ct 132, 135-36, rev. den., 411 Mass. 1105 (1991); Hamilton v. Conservation Comm’n of Orleans, 12 Mass.App.Ct. 359, 368 (1981). However, when a local conservation commission rests its decision on a wetlands bylaw that provides greater protection than the WPA, the local requirements trump the requirements of the WPA, and the local decision cannot be preempted by a DEP superseding order. Conservation Comm’n of Falmouth v. Pacheco, 49 Mass.App.Ct. 737, 741 n.4 (2000); FIC Homes of Blackstone, Inc v. Conservation Comm’n of Blackstone, 41 Mass.App. at 687-88; DeGrace v. Conservation Comm’n of Harwich, 31 Mass.App.Ct. at 136.
For example, where a local bylaw regulated all activities within a 100-foot buffer zone without a showing that such activities will have an impact on wetlands and the WPA regulates activities in the buffer zone only if they “alter” the wetlands, the bylaw was more stringent and was not preempted. See FIC Homes of Blackstone, Inc. v. Conservation Comm’n of Blackstone, 41 Mass.App. at 687; T.D.J. Develop. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. at 127. Further, a local bylaw which adds wetlands interests such as erosion control, sedimentation control, and recreation to those interests protected by the WPA may also be considered more stringent. Dubuque v. Conservation Comm’n of Barnstable, 58 Mass.App.Ct. 824, 826 n.4, rev. den., 440 Mass. 1106 (2003); T.D.J. Develop. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. at 127. Cf. DeGrace v. Conservation Comm’n of Harwich, 31 Mass.App.Ct. at 136 (local bylaw which simply adopts and incorporates provisions of WPA is not more stringent). In determining whether a DEP superceding order has preemptive effect, the court must focus on the specific provisions of the WPA and the local bylaw which apply to the project at issue. T.D.J. Develop. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. at 126.
It is undisputed that the Project was subject to direct regulation under both the WPA, because the proposed work falls within the 200-foot Riverfront Area, and the Bylaw, because the proposed work falls within the 100-foot wetlands buffer zone. Under the WPA Riverfront performance standards, HBF was required to show that the Project, including proposed mitigation measures, will have no significant adverse impact on the interests protected by the WPA. 310 Code Mass. Regs. §10.58(4)(d). HBF was further required to show that there is no practicable and substantially equivalent economic alternative to the Project with less adverse effects, taking into account costs, existing technology, the proposed use, and logistics including legal or physical restraints on proposed alternatives. 310 Code Mass. Regs. §10.58(4)(c).
Under §11 of the Bylaw, HBF was required to show that the Project will not have significant adverse effects, immediate or cumulative, on the interests protected by the Bylaw. HBF was further required to show that there is no feasible alternative to the Project that would have materially less adverse effect on the protected wetlands interests. The standards under the WPA and the Bylaw as applied to the Project thus appear to be functionally equivalent. The Commission argues, however, that the Bylaw is more stringent because under §2, it is presumed that any activity within 50 feet of a wetland or river bank will have a significant adverse effect on wetland values, and the applicant must *384 overcome this presumption by showing by convincing evidence that the proposed project will not produce a significantadverseeffect.[3] Regardless of whether the applicant has to overcome a presumption of adverse impact or faces no such presumption, the applicant’s burden under both the Bylaw and the WPA is ultimately the same: to demonstrate no significant adverse impact to the wetlands. This Court therefore does not view the Bylaw as more stringent than the statute simply because of the §2 presumption. Cf. FIC Homes of Blackstone, Inc. v. Conservation Comm’n of Blackstone, 41 Mass.App.Ct. at 685 (no functional difference between giving applicant burden of proof to show activities in protected area will not harm bylaw interests and a presumption of significance for protected areas).
Nonetheless, the Commission argues that whether the WPA Riverfront performance standards are equally as stringent as the Bylaw standards for the Project is irrelevant, given that DEP treated the Project as a “limited project” under 310 Code Mass. Regs. §10.53(3) which provides in relevant part:
Notwithstanding the provisions of 310 CMR 10.54 through 10.58 and 10.60, the issuing authority may issue an Order of Conditions and impose such conditions as will contribute to the interests identified in M.G.L.c. 131, §40 permitting the following limited projects ... In the exercise of this discretion, the issuing authority shall consider the magnitude of the alteration and the significance of the project site to the interests identified in M.G.L.c. 131, §40, the availability of reasonable alternatives to the proposed activity, the extent to which adverse impacts are minimized, and the extent to which mitigation measures, including replication or restoration, are provided to contribute to the protection of the interests identified in M.G.L.c. 131, §40.
As noted by the Commission, this regulation allows DEP to approve a project in a Riverfront area which does not necessarily meet the Riverfront performance standards of §10.58(4), as long as the project contributes to the protection of wetlands interests. However, after finding the bridge crossing to be a limited project due to the lack of alternative access with less wetlands impact, DEP’s May 8, 2001 Superseding Order of Conditions states:
Based on the Department’s telephone conversation with Mr. Chip Norton of the City of Cambridge Water Department on February 13, 2001, it is the Department’s belief that the project as conditioned will not adversely affect the Cambridge Reservoir, Hobbs Brook or the interest of public water supply. Additionally, the Department finds that the project will have no adverse impact on the Riverfront Area because the common driveway will substantially utilize the existing denuded/disturbed cart path alignment and vegetative cover will be restored within any remaining denuded areas of the cart path pursuant to the proposed “Riverfront Area Revegetation Plan” as conditioned by the Department.
Thus, it appears that despite the limited project designation, DEP held the Project to the standard ultimately required by both the WPA Riverfront performance standards and the Bylaw: no significant adverse impacts on protected wetlands interests.[4]
Because the Lincoln Bylaw as applied to HBF’s proposed work was no more stringent than the WPA as applied to the Project, the DEP’s May 8, 2001 Superseding Order of Conditions, made final on August 11, 2003, preempts the Commission’s June 27, 2000 Order of Conditions denying permission to develop Lots 4 and 5. In light of this conclusion, this Court need not address HBF’s alternative argument that the Commission’s decision is unsupported by substantial evidence and is arbitrary and capricious.
ORDER
For the foregoing reasons, it is hereby ORDERED that HBF’s motion for leave to present additional evidence be ALLOWED with respect to the DEP administrative record but is otherwise DENIED. It is further ORDERED that Hobbs Brook Farm Properly Company Limited Partnership’s motion for judgment on the pleadings be ALLOWED on the ground that with respect to the development of Lots 4 and 5, the June 27, 2000 “Notice of Intent Decision and Record of Proceedings under the Lincoln Wetlands Protection Bylaw” is preempted by the DEP Superseding Order of Conditions. The Conservation Commission of Lincoln’s cross-motion for judgment on the pleadings is DENIED.

This is an “Approval Not Required” plan.

The Town concluded that it could not afford to both pursue the administrative appeal and defend against HBF’s judicial appeal.

This Court notes that Code Mass. Regs.§10.58(3) of the WPA contains a functionally similar presumption that a riverfront area is significant to protecting wetlands interests. See FIC Homes of Blackstone, Inc. v. Conservation Comm’n of Blackstone, 41 Mass.App.Ct. at 685.

Even assuming that DEP evaluated the Project strictly as a “limited project,” 310 Code Mass. Regs. §10.53(3) requires an analysis of reasonable alternatives and consideration of the extent to which any adverse impacts are minimized, standards similar to those of the Bylaw, in determining that the proposed work as conditioned contributes to the protection of wetlands interests.