DIANE MCCORMICK *vs.* LABOR RELATIONS COMMISSION;
EAST LONGMEADOW EDUCATION ASSOCIATION, intervener.

Suffolk. November 4, 1991. - March 11, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Labor Relations Commission. Labor,* Judicial review, Union agency fee,
Fair representation by union. *Administrative Law,* Judicial review.
*Constitutional Law,* Freedom of speech. *Limitations, Statute of.*

The Labor Relations Commission correctly dismissed a challenge to the
validity of agency fees demanded by a union of a nonmember for whom
the union served as the bargaining representative, where the union had
given the nonmember notice of the imposition of the fee and an oppor-
tunity to vote on the collective bargaining agreement, in accordance
with G. L. c. 150E, § 12. [166-168]

A nonuninon employee was not entitled, under the authority of *Madison
Joint Sch. Dist. No. 8* v. *Wisconsin Employment Relations Comm'n,*
429 U.S. 167 (1976), to express her general views on a proposed collec-
tive bargaining agreement at a nonpublic contract ratification meeting
convened by the union. [169]

On an appeal from a decision of the Labor Relations Commission an em-
ployee was not entitled to raise arguments that she failed to raise before
the commission. [169-170]

APPEAL from a decision of the Labor Relations Commis-
sion.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Bruce N. Cameron* of Virginia, for the plaintiff.

*Jean Strauten Driscoll* for the defendant.

*Margery E. Williams,* for East Longmeadow Education
Association, intervener, submitted a brief.

ABRAMS, J. Diane McCormick, a guidance counselor in the
East Longmeadow public schools, appeals from a final order
of the Labor Relations Commission (commission) dismissing

her challenge to the validity of agency fees[1] demanded by her exclusive bargaining representative, East Longmeadow Education Association (association). We transferred the case from the Appeals Court on our own motion. On appeal, Mc-Cormick contends that the association, in prohibiting her from speaking about the terms of a proposed contract at a contract ratification meeting, violated her statutory and constitutional rights. For the reasons discussed below, we affirm the commission's dismissal.

1. *Facts.* McCormick's employer and the association entered into a collective bargaining agreement (contract) for a three-year period extending from September 1, 1987, to August 31, 1990. The contract required bargaining unit employees who did not wish to join the association to pay an agency fee. McCormick was not an association member. The contract was ratified at a meeting convened by the association on September 15, 1987. All employees in the bargaining unit were permitted to vote on the contract at that meeting. However, the association forbade people who were not association members from commenting on, or asking questions about, any aspects of the proposed contract other than the agency fee clause.[2]

---

[1]Agency fees, also known as service or fair share fees, are the proportional share of union dues that nonmembers must pay to a union to help defray "collective bargaining, contract administration, and grievance adjustment" expenses. *Harrison* v. *Massachusetts Soc'y of Professors/ Faculty Staff Union/MTA/NEA*, 405 Mass. 56, 61 (1989); *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n*, 385 Mass. 70, 78 (1982). These fees are assessed to avoid the "free rider" problem; that is, if a bargaining unit's employees could get all of the benefits of unionization without any of the burdens (e.g., union dues), there would be little incentive for anyone to join the union. By law, these agency fees may not include any sums for the support of "social, political, or speech activities of the [union]." *Id.* Accord *Chicago Teachers Union Local No. 1* v. *Hudson*, 475 U.S. 292, 294 (1986); *Ellis* v. *Brotherhood of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Employees*, 466 U.S. 435, 447 (1984).

[2]The notice of the ratification meeting informed those invited to attend that "[m]embers of the [association] may ask for clarification and make comments on any part of the contract proposals. Non members of the [association] may ask for clarification and make comments on just the fair share section."

On November 23, 1987, the association sent McCormick a demand letter, asking that she pay either the agency fee or a scholarship fee for the 1987-1988 school year pursuant to the contract requirements. McCormick responded with a challenge, filed with the commission, to the propriety of the agency fee demand. When the association subsequently withdrew the demand,[3] the commission dismissed the challenge as moot. On June 22, 1989, the association demanded the 1987-1988 agency fee as well as the 1988-1989 agency fee. McCormick again filed a challenge with the commission.[4] On July 12, 1990, the commission dismissed her complaint. Pursuant to a request by McCormick filed on July 19, 1990, the commission reconsidered its dismissal. On January 4, 1991, it affirmed the dismissal.

McCormick challenged the agency fee on ten grounds before the commission. On appeal, however, she asks us to review only one of these claims, her claim that the agency fee is invalid because the association "[s]ilenced non members with respect to public questioning of the entire contract proposal at the ratification meeting — i.e., allowed *only* fair share points of clarification from nonmembers prior to ratification vote" (emphasis in original). She argues that this prohibition on nonmember speech violated her statutory and constitutional rights. Because most of McCormick's arguments are raised for the first time on this appeal, they are not properly before us. Therefore, we do not reach them. Those arguments that are properly before us are without merit.

2. *Discussion.* McCormick's complaint before the commission was formulated solely as a challenge to the validity of

[3]The association withdrew its demand because the demand letter was mailed before the collective bargaining agreement had been executed, in violation of the commission's regulations. 456 Code Mass. Regs. § 17.03 (1) (1986).

[4]Other employees in the bargaining unit who were not association members joined McCormick in her charges. The commission informally consolidated all charges, resolving them in a single opinion. In her brief, McCormick states "the parties agreed to assemble the record only in McCormick's appeal, and be bound by the outcome of her case."

the service fees. Her complaint was filed on one of the commission's own forms, entitled "Charge of Prohibited Practice Challenging a Service Fee." The following words appear directly under that heading: "Note: 456 CMR 17.06 provides that a public employee may challenge the validity or amount of a service fee by filing a prohibited practice charge with the commission. 'Validity' shall mean whether or not there has been compliance with 456 CMR 17.03 and 17.05. 'Amount' shall mean whether or not some or all of the service fee demanded by an employee organization is impermissible under 456 CMR 17.04(1)." McCormick wrote on the form that "this challenge is one of validity." Where McCormick was asked to state the basis of her challenge to the validity of the service fee, she refers the reader to "see attachment B," a two-page typewritten supplement of her own.[5] At the top of her attachment B, McCormick wrote that "[t]he validity of the 1987-88 and 1988-89 fair share fee . . . is being challenged for violations of M. G. L. c. 150E ss. 12, 13, and 14; 456 CMR 17.03; 456 CMR 17.05; as well as the due process procedures established by [cases dealing with agency service fees]."

General Laws c. 150E, § 12 (1990 ed.), provides, in part, that a "service fee shall not be imposed unless the collective bargaining agreement requiring its payment as a condition of employment has been formally executed, pursuant to a vote of a majority of all employees in such bargaining unit present and voting. Prior to the vote, the exclusive bargaining agent shall make reasonable efforts to notify all employees in the unit of the time and place of the meeting at which the ratification vote is to be held, or any other method which will

---

[5]Following the sections where the charging party is to fill out the basis of the challenge, the form reads, "[b]y these acts, the Bargaining Agent listed above has violated M. G. L. c. 150E Section 10 (b) (1)." Section 10 (*b*) (1) provides that "[i]t shall be a prohibited practice for an employee organization or its designated agent to . . . [i]nterfere, restrain, or coerce any employer or employee in the exercise of any right guaranteed under this chapter."

be used to conduct the ratification vote."[6] In sum, § 12 requires unions, as a condition of imposing service fees on nonmembers, to give them notice and an opportunity to vote on the contract. Title 456 Code Mass. Regs. § 17.03 (1) (1986), reiterates § 12: "No service fee shall be imposed unless the collective bargaining agreement requiring its payment as a condition of employment has been formally executed pursuant to a ratification vote of a majority of all employees casting valid votes in person at a meeting or meetings or by mail in a mail ballot ratification procedure." McCormick does not dispute that she was notified of the ratification meeting and given an opportunity to vote on the contract. We cannot say that the commission abused its discretion in reading the language in § 12 and 456 Code Mass. Regs. § 17.03,[7] as limited to its terms, and, accordingly, dismissing McCormick's complaint. See *Operation & Maintenance Serv., Inc. Westover Job Corps Center/G.E.* v. *Labor Relations Comm'n*, 405 Mass. 214, 218 (1989) (construction that administrative agency charged with its enforcement gives statute is "distinct and profound exercise of discretion"); *Quincy City Hosp.* v. *Labor Relations Comm'n*, 400 Mass. 745, 748 (1987) (commission has "substantial discretion . . . in its disposition of prohibited practice charges" and is "granted wide latitude in resolving complaints").

---

[6]The last sentence of § 12 provides that "[i]t shall be a prohibited labor practice for an employee organization or its affiliates to discriminate against an employee on the basis of the employee's membership, nonmembership or agency fee status in the employee organization or its affiliates." McCormick argues that we should derive from this language a right of nonmembers "to speak and vote on the collective bargaining agreement in exactly the same way as [members]." Because this is a duty of fair representation claim, we do not reach it. See *infra* at 169-170. It would be especially unwise for us to reach this particular claim in this case, because we do not have the benefit of the commission's construction of this part of § 12. McCormick did not raise this duty of fair representation argument before the commission, and there are no prior commission decisions addressing the meaning and scope of the last sentence of § 12.

[7]The other statutes and regulations cited by McCormick as the basis for her challenge are not relevant to this appeal.

In a memorandum filed with the commission, McCormick cited *Madison Joint Sch. Dist. No. 8* v. *Wisconsin Employment Relations Comm'n*, 429 U.S. 167 (1976), in support of her argument that the association "illegally den[ied non-members] the right to speak." The commission, in its dismissal, responded that *Madison* did not support her claim. We agree. The dispute in *Madison* centered on whether nonunion employees could express their views on a proposed contract at a public school board hearing. The fact that the hearing was open to the public was essential to the Supreme Court's holding that, "when the board sits in public meetings to conduct public business and hear the views of citizens, it may not be required to discriminate between speakers on the basis of their employment, or the content of their speech." *Id.* at 176. The meeting at issue here was not a public one.[8]

Most of McCormick's arguments on appeal, unlike her challenge before the commission, are cast as duty of fair representation claims.[9] She argues that, in prohibiting her from speaking or asking questions about the contract, the association violated its duty of fair representation, which, she claims, is prohibited by G. L. c. 150E, §§ 12 and 5, as well as the Federal and State Constitutions. Because McCormick

---

[8]We note additionally that the association, in order to ratify the contract, was not required to hold a meeting at all. It could have conducted the ratification vote by mail. General Laws c. 150E, § 12, uses the phrase "any other method which will be used to conduct the ratification vote." The commission's regulations permit mail ballot ratification. 456 Code Mass. Regs. § 17.03 (1) and (2).

[9]General Laws c. 150E, § 5, contains the fair representation requirement. It reads, in pertinent part, that "[t]he exclusive representative shall have the right to act for and negotiate agreements covering all employees in the unit and shall be responsible for representing the interests of all such employees without discrimination and without regard to employee organization membership." See *Leahy* v. *Local 1526, Am. Fed'n of State, County, & Mun. Employees*, 399 Mass. 341, 348 (1987) ("even if the Massachusetts statute did not provide for the duty of fair representation, the courts would infer it as a constitutional requirement"). A union breaches its duty of fair representation if its "actions toward an employee are 'arbitrary, discriminatory, or in bad faith.' " *Graham* v. *Quincy Food Serv. Employees Ass'n & Hosp., Library & Pub. Employees Union*, 407 Mass. 601, 606 (1990), quoting *Vaca* v. *Sipes*, 386 U.S. 171, 190 (1967).

complained of an invalid agency fee before the commission, not a breach of the duty of fair representation, we do not consider those claims.[10] McCormick cannot raise on appeal arguments that she failed to raise before the commission. See *Seagram Distillers Co.* v. *Alcoholic Beverages Control Comm'n,* 401 Mass. 713, 724 (1988); *Gurry* v. *Board of Pub. Accountancy,* 394 Mass. 118, 126 (1985); *Therrien* v. *Labor Relations Comm'n,* 390 Mass. 644, 648 (1983); *Albert* v. *Municipal Court of the City of Boston,* 388 Mass. 491, 493 (1983); *Shamrock Liquors, Inc.* v. *Alcoholic Beverages Control Comm'n,* 7 Mass. App. Ct. 333, 335 (1979).[11] Nowhere in her challenge to the validity of the agency fees does McCormick mention the "duty of fair representation." The first time that McCormick raised the duty of fair representation claim was after she had filed her July 19 request for reconsideration of the commission's dismissal of her charges. On September 18, 1990, she filed a statement in support of her request for reconsideration. In that request she alleged, for the first time, over three years after the ratification meeting at issue, that the association's method of conducting the ratification meeting "breaches the [association's] duty of fair representation and is also a violation of our First Amendment rights."

---

[10]In responding to another of McCormick's claims, one which is not before us on this appeal, the commission wrote that (1) the alleged prohibited practice occurred more than six months before the charges were filed and hence was barred by the relevant statute of limitations and (2) "this portion of the charges of prohibited practice appears to allege that the Union breached its duty to represent them fairly in violation of Section 10 (*b*) (1) of the Law, and therefore cannot appropriately be addressed by the Commission as part of a challenge to the validity of a demand for a service fee."

[11]McCormick, who proceeded pro se until the time she filed her motion for reconsideration, argues that "[t]eachers [a]re [n]ot [e]xpected [t]o [b]e [l]awyers." This argument is of little avail. Pro se litigants are bound by the same rules of procedure as litigants represented by counsel. *Mmoe* v. *Commonwealth,* 393 Mass. 617, 620 (1985). *McGowan* v. *Director of the Div. of Employment Sec.,* 388 Mass. 1003, 1004 (1983). See *International Fidelity Ins. Co.* v. *Wilson,* 387 Mass. 841, 847 (1983). Accord *Andrews* v. *Bechtel Power Corp.,* 780 F.2d 124, 140 (1st Cir. 1985), cert. denied, 476 U.S. 1172 (1986).

Even if McCormick had raised the duty of fair representa-
tion claim in her first challenge, it would have been time
barred.[12] McCormick had six months from the date of the
conduct complained of to file her duty of fair representation
charge, 456 Code Mass. Regs. § 15.03 (1986); *Town of Han-
son & Local 2713, Hanson Permanent Fire Fighters Ass'n,*
16 M.L.C. 1352 (1989); the ratification meeting had taken
place eight months earlier. By the time McCormick raised
the duty of fair representation claim on September 18, 1990,
it was barred by the relevant State statute of limitations. See
*Graham* v. *Quincy Food Serv. Employees Ass'n & Hosp.,
Library & Pub. Employees Union,* 407 Mass. 601, 613
(1990) (three-year limitations period for duty of fair repre-
sentation claim).[13]

The commission's dismissal of McCormick's complaint is
affirmed.

*So ordered.*

---

[12]The challenge to the validity of the agency fees, however, was timely
filed. Service of the demand for the fee triggers the running of the limita-
tions period for such challenges. 456 Code Mass. Regs. § 17.06 (2). The
demand had been served less than six months before McCormick filed her
challenge to the validity of the agency fee.

[13]Although the association has the burden of pleading and proving an
affirmative statute of limitations defense before the commission, *Town of
Wayland & IBPO,* 5 M.L.C. 1738, 1741 (1979); *City of Pittsfield &
Pittsfield Permanent Firemen's Ass'n,* 4 M.L.C. 1905, 1908 (1978), here
the association could not be expected to plead and prove a defense to a
claim of which it did not have notice.