JAMES BELHUMEUR & others[1] *vs.* LABOR RELATIONS COMMISSION. Nos. 89-P-247 & 89-P-248. April 10, 1992. *School and School Committee*, Collective bargaining. *Labor*, Union agency fee. *Labor Relations Commission. Limitations, Statute of.*

Three teachers in the Springfield school system dispute the lawfulness of a five-day suspension without pay for failing to remit an agency service fee to the Springfield Education Association (the "union"). Their protest to the Labor Relations Commission, in the form of prohibited practice charges against the school committee of Springfield and the union, were dismissed. The teachers — Belhumeur, Patricia Burns and Michael Burns — are not members of the union. Unions may assess an agency service fee to nonmembers, in lieu of union dues, for representing the interests of nonmembers with their employer. In setting an agency service fee, a union is to deduct from its aggregate operating costs expenditures for political ac-

[1]Patricia Burns and Michael Burns.

tion, social affairs, and other programs which promote the union but are unrelated to administration of the collective bargaining agreement of which nonmembers have the benefit. The idea is that nonunion members are not to get a free ride for representation, but need not support promotion of the union and its ideology.

Principles and limitations governing the assessment of agency service fees have been considered and discussed in: *Chicago Teachers Union, Local No. 1* v. *Hudson*, 475 U.S. 292, 294 (1986); *School Comm. of Greenfield* v. *Greenfield Educ. Assn.*, 385 Mass. 70, 77-85 (1982); *Lyons* v. *Labor Relations Commn.*, 397 Mass. 498 (1986); *Harrison* v. *Massachusetts Soc. of Professors/Faculty Staff Union/MTA/NEA*, 405 Mass. 56 (1989); *McCormick* v. *Labor Relations Commn.*, 412 Mass. 164 (1992). There is no need to rehearse those principles and limitations. The narrow question is whether the teachers missed the deadline prescribed by regulation for bringing to the commission a challenge to the fairness of an agency service fee.

That the agency service fee assessed for the school year 1985-1986 was unlawful is apparent because the fee of $310.80 was precisely the same as the union dues for the same period. One hundred percent of the union's costs could not convincingly be ascribed to contract administration. The union recognized as much by informing nonmembers it would send out notice of a rebate procedure some six months in the future. That was an impermissible procedure, as the union learned from the opinions subsequently published in *Chicago Teachers Union Local No. 1* v. *Hudson*, 475 U.S. at 310, and *Harrison* v. *Massachusetts Soc. of Professors/Faculty Staff Union/MTA/NEA*, 405 Mass. at 61-66. Indeed, the union later withdrew its demand that the teachers pay the agency service fee for 1985-86. That did not render the teachers' charges of prohibited practice moot because they had, by then, suffered the unpaid suspensions referred to below.

Regulations of the commission for challenging an agency service fee require that an aggrieved employee, except for good cause shown, file a charge with the commission "within six (6) months after the bargaining agent has made a written demand for payment of the fee. . . ." 456 Code Mass. Regs. § 17.06(2) (1986). The teachers failed to meet that time limit. Written demand for payment was made by the union on September 10, 1985. We have reviewed the September 10 document, and it requests payment without qualification. The attempt of the teachers to extend the deadline by starting to count months from the date of a final demand made on February 24, 1986, is without merit. In that last notice, the union warned the teachers that it would exercise its rights under the collective bargaining agreement with the school committee to require the superintendent of schools to suspend without pay for five days a nonmember employee who had not remitted the agency service fee. The union's initial demand of September 10, 1985, was no less certain because the union was conscientious about following it up. Before the last notice of

February 24, 1986, the union had sent a reminder notice on November 14, 1985. On March 19, 1986, the superintendent of schools suspended the teachers without pay for five working days.

The six-month period following September 10, 1985, ended March 10, 1986. Belhumeur did not file a challenge to the 1985-1986 agency service fee with the commission until April 14, 1986, and the Burnses on May 12, 1986, only after they had suffered their suspensions without pay. Those filings were in the form of letters which set forth the grievances of the teachers about the agency service fees assessed to them. The commission's regulations for contesting an agency service fee establish detailed procedures for challenge, investigation, complaint by the commission, hearing, and decision. See 456 Code Mass. Regs. §§ 17:06-17:15 (1986). Those procedures included a provision by which an aggrieved employee may avoid suspension for not paying an agency service fee to the union by paying it into an escrow account jointly administered with the bargaining agent. See 456 Code Mass. Regs. §§ 17.06 and 17.07 (1986). In *Lyons* v. *Labor Relations Commn.*, 397 Mass. at 503-507, it was held that an earlier version of the time limitation regulation, 402 Code Mass. Regs. § 17:06(2) (1982), which allowed only forty-five days to challenge an agency service fee assessment, was too short in a constitutional sense, and that the time for protest was to be no shorter than the six months generally applicable for filing charges of unlawful labor practices with the commission. In accordance with § 17.05 of the commission's regulations, the teachers were furnished with copies of the entire set of rules then applicable, i.e., 402 Code Mass. Regs. § 17.00 (1982). The demand was sent out before publication of the decision in the *Lyons* case and the time standard in the printed regulations attached to the demand was, therefore, the old forty-five day one, provided for in 402 Code Mass. Regs. § 17:06 (2) (1982). We have, however, measured the teachers' obligation to file their challenges by the constitutionally acceptable six-month period. The *Lyons* opinion authorizes a six-month limitations period for filing a challenge to an agency service fee with the commission. See also *McCormick* v. *Labor Relations Commn.*, 412 Mass. at 171.

It was not open to the teachers to disregard entirely the procedures established by the commission to challenge the agency service fees until they had suffered their suspensions. Indeed, this was a wholly unnecessary sacrifice on the part of the teachers, which cost them more money than payment of the agency service fee into escrow. (The five days' pay amounted to about $800.) The teachers do not particularly advance their cause by draping a constitutional mantle around it. Vindication of even a constitutional claim — here under the First Amendment to the United States Constitution — may be subject to reasonable procedures, administered in a neutral fashion. Cf. *Walker* v. *Birmingham*, 388 U.S. 307, 318-320 (1967). The escrow option was fair in that it secured funds pending adjudication but did not, before adjudication, compel the teachers to "contrib-

ute even 'three pence' for the 'propogation of opinions which [they] disbelieve[d].' " *Chicago Teachers Union, Local No. 1* v. *Hudson*, 475 U.S. at 305 (citation omitted).

Although the commission did so for shifting and somewhat mystifying reasons, its dismissal of the challenge brought by the teachers was correct for the reason that the teachers did not timely press their claims. The dismissal by the commission of the prohibited practice charges of the teachers is affirmed.

*So ordered.*

*Carol Booth* for the plaintiffs.

*Jean Strauten Driscoll* for the defendant.

*Brian A. Riley*, for Springfield Education Association & another, interveners, submitted a brief.