Quinlan, Regina L., J.
Plaintiffs Thomas Regan and Donna Friedman (“Plaintiffs”) brought this action pursuant to G.L.c. 249, §4, challenging a decision by the Falmouth Conservation Commission (“Commission”) to deny a permit and variance to construct and maintain a pier, ramp, and floating dock. Here, Plaintiffs move for judgment on the pleadings, pursuant to Mass.R.Civ.P. 12(c). The Commission also moves for judgment on the pleadings, asking the court to uphold its decision. This court heard oral argument on July 24, 2008 and took the matter under advisement.
For the following reasons, Plaintiffs’ Motion for Judgment on the Pleadings is DENIED and the Commission’s Motion for Judgment on the Pleadings is ALLOWED.
BACKGROUND
A. Administrative Record
On February 10, 2006, Plaintiffs filed a Notice of Intent (“NOI”), seeking permission to construct and maintain a timber pier, ramp, and floating dock on their property, located at 353 Davisville Road, East Falmouth. Massachusetts. (Admin. Record,[2] Ex. 1 at 3-4.) Because the waterfront property is subject to a Wetlands Restriction Order, Plaintiffs proposed to mitigate their project by collecting and relocating shellfish in the area, contributing to the Natural Resources Department, elevating the decking, using environmentally sensitive materials, and constructing an irrigation well to remove nitrogen. {Id. at 11-12.) In return, they requested a variance under F.W.R. 10.13 from the performance standards set out in Falmouth Wetlands Regulations[3] 10.16(1)(h)(2). (Id.)
The Commission held public hearings regarding Plaintiffs’ request on March 1, and May 17, 2006. (A.R., Ex. 12, 21.) On June 7, 2006, the Commission publicly voted to deny the permit and variance because “the proposal would have a significant effect on shellfish.” (A.R., Ex. 26 at 1.) The following day, the Commission issued a written denial, declaring that the request for a variance was without merit because Plaintiffs failed to demonstrate all of the following: that there was “real economic or other hardship,” that “the proposed mitigation measures will result in an improvement to the environment of the area,” and that construction will create an overriding public benefit. (A.R., Ex. 27 at 15.)
*563 The Plaintiffs filed a request for a Superseding Order of Conditions with the Department of Environmental Protection (“DEP”).[4] The DEP made suggestions to minimize the project’s impact on the shellfish population, and Plaintiffs accordingly redesigned their plan. (Supplemental Admin. Record,[5] Ex. 2 at 1.) On July 28, 2006, the Plaintiffs had also filed with the Superior Court for certiorari review of the Commission’s June 7 decision. (Docket No. 1.) Once the Plaintiffs modified their plan to comply with DEP concerns, the parties reached a joint agreement to remand the case on December 13, 2006. This court remanded to the Commission on December 18, 2006.
On January 3, 2007, the DEP notified the Commission of its conclusion that “the project as revised and conditioned herein adequately protects the interests” of G.L.c. 131, §40. (S.A.R, Ex. 4 at 1.) Attached to that letter was the DEP’s Superseding Order of Conditions, detailing the conditions of its approval. (Id. at 7.)
The Plaintiffs accordingly refiled their request for a permit with the Commission on February 12, 2007. (S.A.R., Ex. 5 at 1.) In the revised plan, the Plaintiffs included the following new measures to mitigate the project’s environmental impact: using one less pair of piles in the shellfish resource area, restricting development of one acre of their properly, donating $500 to the Falmouth Association Concerned with Estuaries and Saltponds, and managing their lawn with reduced nitrogen fertilizer. (Id. at pp. 1, 4-6.)
On February 28, 2007, the Commission held a public hearing to re-open the NOI under the joint agreement to remand from the Superior Court. (S.A.R., Ex. 8, 9, 10.) At this meeting, the Commission discussed the merits of the case with particular emphasis on satisfaction of the variance requirements, incorporating into the record those hearings that led up to the first denial. (S.A.R., Ex. 11 atpp. 16-18.) The Commission took the case under advisement, leaving it open for a week to allow the Plaintiffs to submit cases that supported one of their arguments. (Id. at p. 18.)
On March 14, 2007, the Commission publicly voted a second time to deny the variance and then the order of conditions. (S.A.R., Ex. 14 at pp. 1-2.) The following day, on March 15, 2007, the Commission mailed the Plaintiffs the decision “to deny your application to construct a timber pier, ramp and floating dock . . . [because] the project does not meet one or more performance standards of the Falmouth Wetland Regulations.” (S.A.R., Ex. 16 atp. 1.)
B. Procedural Posture
Following the Commission’s second denial of a permit and variance, the Plaintiffs moved to return the case to the docket and active status on June 7, 2007. (Docket No. 5.) This court allowed the motion on June 25, 2007. Plaintiffs now request that this court vacate the Commission’s decision and either remand for further proceedings or order that the Plaintiffs be allowed to proceed with their project. In response, the Commission asks that this court enter judgment dismissing the Plaintiffs’ complaint and affirming the Commission’s second decision.
DISCUSSION
The proper vehicle for resolution of petitions for judicial review of administrative proceedings by action in nature of certiorari is a motion for judgment on the pleadings. Drayton v. Commissioner of Corr., 52 Mass.App.Ct. 135, 140 n.4 (2001), citing The Black Rose, Inc. v. Boston, 433 Mass. 501, 503 n.1 (2001). Plaintiffs argue that they deserve judgment on the pleadings because the Commission: (1) did not issue its first decision in a timely matter, and (2) issued a second decision that fails to satisfy the requirements of certiorari review as it (a) does not result from proper deliberation and weighing of evidence, (b) lacks substantial evidence and is an abuse of discretion, and (c) fails to apply the proper standard of review. This court finds, however, that the Commission’s second decision supersedes its first, is based on substantial evidence, and is not arbitrary and capricious.
A. First Denial: Superseded
The Plaintiffs argue that this court should enforce the DEP’s order of superseding conditions because the Commission failed to act in a timely manner. Although the Commission was late in issuing its first denial and the DEP issued what should have been a final decision, the Plaintiffs then elected to remand the case to the Commission. This court therefore applies principles of equity and declines to grant judgment on the pleadings for the Plaintiffs on the basis of timeliness.
The Commission must issue a written decision within twenty-one days of its public hearing on the NOI. G.L.c. 131, §40 (2008). Even a brief delay in issuing this decision can render the Commission’s order without effect. Id.; see also Oyster Creek Preservation, Inc. v. Conservation Comm’n of Harwich, 449 Mass. 859, 864 (2007) (defining the date of issuance as the day an order is postmarked). The courts do not necessarily deem the NOI granted if the Commission mails its order beyond the twenty-one days allowed by statute, but the Plaintiffs may then seek relief from the DEP. Oyster Creek, 449 Mass. at 864-65. Ultimately, when the Commission “does not issue its decision within the required twenty-one day period and the applicant appeals to the DEP, it is the DEP’s superseding order that controls; any late-issued decision of the commission is without effect.” Id. Here, the Commission held its last public hearing on the Plaintiffs’ NOI on May 17, 2006. The Commission issued its written decision twenty-two days later on June 8, 2006.[6] As required by statute, the Plaintiffs filed with and received a superseding order of conditions from the DEP. The normal result would be that the DEP decision would supersede, and the Commission’s late-issued June 8 order would be ineffectual.
*564 The DEP decision does not govern the outcome of this case, however, because equitable considerations prevent the Plaintiffs from objecting to the timeliness of the Commission’s first decision. Generally, the failure to raise a matter in an administrative adjudicatory proceeding constitutes a waiver of that issue and precludes parties from raising it on judicial review. McCormick v. Labor Relations Comm’n, 412 Mass. 164, 170 (1992); Hosking v. Contributory Retire. App. Bd., 49 Mass.App.Ct. 710, 712 (2000), citing Foxboro Harness, Inc. v. State Racing Comm’n, 42 Mass.App.Ct. 82, 85 (1997). Not only did the Plaintiffs fail to object to the Commission’s timeliness at the time of the defect, but they then expressly agreed to remand the case to the Commission. Massachusetts law supports the conclusion that the Plaintiffs have therefore waived their right to object, as the Appeals Court has held that a party’s invocation of an agency’s authority constitutes “a waiver of any objection she might have had” to procedural defects. Gordon v. State Bldg. Code App. Bd., 70 Mass.App.Ct. 12, 17 (2007).
As a result, the Commission’s second decision supersedes both its first decision and the DEP order, rendering the Plaintiffs’ claim moot. Even though the DEP’s decision was final, the Plaintiffs cannot now ask this court to enforce it after they voluntarily agreed to remand the case to the Commission. See Reardon v. Commissioner of Corr., 20 Mass.App.Ct. 946, 947 (1985) (ruling that a procedural claim arising out of an administrative hearing “has been rendered moot since the plaintiff was [later] given an administrative rehearing”). Timeliness is not a proper ground for granting judgment on the pleadings, and this court turns instead to consider the Commission’s second decision.
B. Second Denial: Proper Under G.L.c. 249, §4
Review in the nature of certiorari under G.L.c. 249, §4 is available for judicial or quasi judicial proceedings where no other form of review is available, and review is necessary to correct a substantial injury or injustice arising from the proceeding at issue. See Walpole v. Secretary of Exec. Office of Envtl. Affairs, 405 Mass. 67, 72 (1989); Warren v. Hazardous Waste Facility Site Safety Council, 392 Mass. 107, 117 (1984). The function of certiorari review is to correct errors of law, apparent on the record, which adversely affect material rights. MacHenry v. Civil Service Comm’n, 40 Mass.App.Ct. 632, 634 (1996). Relief in the nature of certiorari is warranted where a plaintiff demonstrates errors “so substantial and material that, if allowed to stand, they will result in manifest injustice to a petitioner who is without any other available remedy.” Johnson Prods., Inc. v. City Council of Medford, 353 Mass. 540, 541 n.2 (1968), quoting Tracht v. County Comm’rs of Worcester, 318 Mass. 681, 686 (1945). In a certiorari case, the court is not authorized to weigh evidence, find facts, exercise discretion, or substitute its judgment for that of the administrative body. Rather, the court’s role is limited to determining whether the decision is legally erroneous, or is so devoid of factual support as to be arbitrary and capricious. See FIC Homes of Blackstone, Inc. v. Conservation Comm’n of Blackstone, 41 Mass.App.Ct. 681, 684-85 (1996). The Commission’s decision was based on substantial evidence, and not arbitrary and capricious.
1. Decision Based on Substantial Evidence
Although the Plaintiffs dispute four of the Commission’s findings, each was based on substantial evidence. When an agency decision is based on factual findings, this court may consider the evidentiary basis for those findings, since a decision not supported by substantial evidence is arbitrary and capricious. See generally Doherty v. Retirement Bd. of Medford, 425 Mass. 130, 135 (1997) (applying substantial evidence standard to review of retirement board decision imposing forfeiture of contributions); Konstantopooulos v. Whately, 384 Mass. 123, 136-37 (1981) (applying substantial evidence test to review of revocation of entertainment license). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. In considering whether substantial evidence supports the facts found, this court must examine the entire record and take into account whatever fairly detracts from the weight of the conclusion reached. Doherty, 425 Mass. at 131; Pyfrom v. Commission of Dep’t of Pub. Welfare, 39 Mass.App.Ct. 621, 624 (1996). This court may not, however, substitute its judgment for that of the administrative board under review; where the evidence could reasonably support conflicting conclusions, it is up to the Commission, not this court, to resolve the conflict. Doherty, 425 Mass. at 135, 141-42. Ultimately, “an agency conclusion need not be based on the clear weight of the evidence or even on a preponderance of the evidence, but rather only upon reasonable evidence.” Lisbon v. Contributory Ret. App. Bd., 41 Mass.App.Ct. 246, 257 (1996) (quotations omitted). Substantial evidence, so defined, exists in the record[7] to support each of the Commission’s findings.
First, the Commission had substantial evidence to find that the “applicant still has the same access to Green Pond as he has used during the past years, and this right is not being taken away by this decision.” (S.A.R., Ex. 16 at p. 8.) Regardless of a litoral owner’s supposed entitlement to use of the shore and adjacent waters, the Plaintiffs never before had a pier, ramp, or dock on their property. As the Commission’s Staff Report explained, the Plaintiffs had “and will continue to have access to the water without a dock . . . the [Plaintiffs’] property will not decrease in value by not having a dock, the application] will only increase the property value.” (A.R., Ex. 19 at p. 1.)
Second, the Commission had substantial evidence to support its finding that most of the proposed mitigation measures “do not better protect the shellfish habitat or positively impact the shellfish THAT WOULD *565 BE impacted by the proposed project at this site.” (S.A.R., Ex. 16 at p. 8) (emphasis in the original). The Commission’s Staff Report concluded that the Plaintiffs’ application merely “proposes shellfish mitigation. Please remember on March 26 Town Counsel cautioned the Commission again on accepting [such] mitigation to grant a variance. Shellfish mitigation does not mitigate for damage or alteration to shellfish habitat.” (A.R., Ex. 19 at p. 1.) The Commission could also reasonably find that donations to conservation organizations would not assist the shellfish whose habitat the Plaintiffs intended to alter.
Third, the Commission had substantial evidence to find that “[t]he site does not have unusual characteristics because it has a peat shelf nor because it contains shellfish.” (S.A.R., Ex. 16 at p. 8.) Under the Falmouth Wetlands Regulations, an applicant must show that his property has “unusual characteristics" in order to demonstrate “hardship,” ultimately allowing him to satisfy the burden of proof for a variance and permit. The regulations provide that “(h]ardship means the [denial of a variance and NOI], evaluated in its totality, owing to the unique characteristics of the property, that is unduly oppressive, arbitrary or confiscatory and would involve substantial economic loss . . .” F.W.R. 10.04 (2008). The record clearly supports the conclusion that the property contains a peat shelf and shellfish. (See, e.g., A.R., Ex. 7 at p. 1.) That the Commission has been charged with protecting the shellfish population on properties throughout the area implies that it may conclude that these features are not unusual.
Finally, the Commission had a substantial basis for finding that “the mitigation offered does not compensate for the harm that would result to the natural resources should this project be completed, and it doesn’t provide an overriding public benefit, in fact, it would result in harm to the natural resources AND THUS TO THE PUBUC’S INTEREST.” (S.A.R., Ex. 16 at p. 8 (emphasis in the original).) Correspondence from the Division of Marine Fisheries to the Commission from March 1, 2006 lists twelve separate environmental problems that the proposal presented. (A.R., Ex. 9, pp. 2-3.) Each of these concerns describes a manner in which the project would likely damage the shellfish habitat. (Id.) For example, the memo states that “[s]tor-age of the float on the salt marsh during off-season could have an adverse impact on this resource area, [but] if the float is dragged across the intertidal flats or the salt marsh to reach an upland storage area substantial damage could be done to these resource areas.” (Id. at 3.) The Commission had substantial evidence to conclude that the proposed mitigation would not compensate for this damage and that the project as a whole would harm the environment.
2. Decision Not “Arbitrary & Capricious”
The standard for certiorari review varies according to the nature of the action for which review is sought. Forsyth Sch. for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 217 (1989); FIC Homes, 41 Mass.App.Ct. at 684. Where an administrative board has broad discretion to determine whether to grant an exemption from its regulations, the court’s review is limited to determining whether the decision is arbitrary or capricious or an abuse of discretion. See T.D.J. Dev. Corp. v. Conservation Comm’n of North Andover, 36 Mass.App.Ct. 124, 129 (1994); Forsyth, 404 Mass. at 217 & n.2. A decision is not arbitrary or capricious unless “there is no ground which ‘reasonable [persons] might deem proper’ to support it.” FIC Homes, 41 Mass.App.Ct. at 685, quoting T.D.J., 36 Mass.App.Ct. at 128. A decision that is based on a legally untenable ground, or on factors that are irrelevant under the governing law, is arbitrary. Id. at 218; see Fafard v. Conversation Comm’n of Reading, 41 Mass.App.Ct. 565, 568 (1996) (“[i]f the agency has acted for reasons that are extraneous to the prescriptions of the regulatory scheme, but are related, rather, to an ad hoc agenda, then that agency has acted arbitrarily”); see also FIC Homes, 41 Mass.App.Ct. at 684. The Commission’s decision was not arbitrary and capricious as it applied the proper standard and deliberated before issuing a decision.
a. Standard Applied
The Commission applied the proper standard in deciding to reject the Plaintiffs’ application for a permit and variance. To get a permit to build the pier, ramp, and floating dock, the Plaintiffs first needed a variance from regulations prohibiting construction in areas of high shellfish density. See F.W.R. 10.16(l)(h)(2); 10.35; F.W.R. 10.13(2)(b) (“The Commission shall consider the request for a variance as part of its review of the Permit Application pursuant to FWR 10.05(5)”). Before considering the permit, therefore, the Commission appropriately considered whether to grant a variance. (Transcript of the March 14, 2007 Meeting at p. 12 (denying the permit before the variance).) It is very difficult for applicants to satisfy this standard, as the regulations themselves indicate. See F.W.R. 10.13 Commentary (noting that F.W.R. 10.13 “provides that the Commission may waive the application of one or more of the regulations . . . only in rare and unusual cases”). In denying the request for a variance, the Commission determined that the Plaintiffs did not even satisfy the threshold requirement of demonstrating a “hardship” under the regulations. The Commission, therefore, properly applied the standard for denial of a variance, rather than the standard for denial of a permit.
b. Weighing Evidence and Deliberating
The Commission was not arbitrary and capricious in its weighing of evidence and deliberations. Because there was no deficiency in the Commission’s discussions and any possible shortcoming could not have been prejudicial to the Plaintiffs, this court declines to overturn the Commission’s decision.
*566 Viewed in a vacuum, the March 14, 2007 vote to deny the permit and variance on remand might seem procedurally inadequate, and thus arbitrary and capricious. The Open Meeting Law governs the Commission’s public hearings and meetings regarding permit applications. F.W.R. 10.05(6)(a) (2008). This statute requires that a simple majority of Commission members “deliberate” in a public forum to arrive at a decision. G.L.c. 39, §§23A-B (2008); McCrea v. Flaherty, 71 Mass.App.Ct. 637, 641 (2008) (“[F]or a ‘meeting’ to occur there must be ‘a corporal convening and deliberation’ by a governmental body. ‘Deliberation,’ in turn, requires a ‘verbal exchange between a quorum of members of a governmental body attempting to arrive at a decision on any public business within its jurisdiction.’ ”). At the hearing on March 14, 2007, members of the Commission read aloud their decision, decided to deny the variance before the permit, established that the Plaintiffs had already supplemented the file with Supreme Judicial Court cases, and then voted to deny the application. (See March 14 Transcript, pp. 3-12.) At least arguably, this exchange might not seem to qualify as a “deliberation.”
The procedure employed on March 14, however, does not warrant overturning the Commission’s decision. First, the Commission satisfied the statute’s requirements. Even at the March 14 meeting, the Commission members publicly discussed Plaintiffs’ application among themselves in a manner lengthy enough to cover ten pages of the meeting’s transcript. (March 14 Transcript, pp. 3-12.) Massachusetts courts have interpreted the Open Meeting Law as setting a low standard for what constitutes deliberation. Commission members do not even need to speak with each other during the public meeting in order to satisfy the deliberation requirement. See Gerstein v. Superintendent Search Screening Comm., 405 Mass. 465, 469-70 (1989) (setting a low standard by including committee interviews with candidates for the position of superintendent within the definition of “deliberations”). The discussion on March 14 clearly satisfies this standard. Furthermore, March 14 was the Commission’s second public hearing on remand from the Superior Court. During the first hearing, on February 28, 2007, Commission members had discussed the merits of the NOI and variance application, questioning the Plaintiffs’ attorney with special emphasis on the project’s satisfaction of the variance requirements. (S.A.R., Ex. 11 at pp. 16-18.) The Commission’s chairperson had concluded that discussion by incorporating the record from the first denial into the record for the second denial. (S.A.R., Ex. 11 at p. 18.) Incorporation of the earlier record thereby cured any deliberation deficiency on remand. By any measure, the Commission deliberated as the statute required it to do.
Second, even if the Commission failed to deliberate as required by law, there was no prejudice. “The court’s power on certiorari is not exercised to remedy mere technical errors that have not resulted in manifest injustice.” Cumberland Farms, Inc. v. Planning Bd. of Bourne, 56 Mass.App.Ct. 605, 607 (2002), citing Massachusetts Prisoners Ass’n. Political Action Comm. v. Acting Governor, 435 Mass. 811, 824 (2002). When the Commission convened on remand, its members had already heard and discussed the merits of the case at previous hearings. (S.A.R., Ex. 11 at p. 18 (incorporating the record of previous hearings).) Although the Plaintiffs’ new application included additional mitigating proposals, the project still centered around building a pier, ramp, and floating dock in a place that endangered the shellfish population. (S.A.R., Ex. 5 at 1.) The Commission members had discussed their discomfort with this central project at earlier hearings, and neither the alteration of a negligible detail nor small proposed donations to local conservation charities were likely to alter their opinions. (See, e.g., A.R., Ex. 13, p. 4.) Thus, the Commission was not arbitrary and capricious.
C. Conclusion
The Commission’s first decision was superseded by its second, mooting review of any procedural errors to which the Plaintiffs failed to object. The second decision clearly survives certiorari review as the Commission had substantial evidence to support its factual findings and was not arbitrary and capricious. Plaintiffs may not be able to dock their boat on their land, but they can still see the sunset.
ORDER
It is hereby ORDERED that the plaintiffs’ Motion for Judgment on the Pleadings is DENIED, and the Commission’s Motion for Judgment on the Pleadings is ALLOWED.

“A.R.”

“F.W.R.”

The record does not establish when the Plaintiffs filed this request.

“S.A.R.”

Although the Commission here issued its first decision before the SJC issued its ruling, the Oyster Creek rule applies to the first set of proceedings in this case. This court may apply the Oyster Creek rule retroactively because it merely clarifies a procedural rule that was already in existence, and does not prejudice either party. Moreover, the Superior Court has recently applied the rule in a similar setting where the conservation agency issued its decision before the SJC issued Oyster Creek. See Pheeney v. Houle, BRCV2007-00337, slip op. at 508 (Mass.Super. July 2008) [24 Mass. L. Rptr. 505] (applying the October 23, 2007 Oyster Creek rule to a conservation commission decision issued on April 17, 2007)).

The record includes the records of both sets of hearings. (S.A.R., Ex. 11 at p. 18 (incorporating the earlier record on remand).)